OPINION *Page 2 
{¶ 1} Defendant-appellant, Russell Bertuzzi (hereinafter "Bertuzzi"), appeals the judgment of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} On November 29, 2006, Bertuzzi was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a second degree felony; and one count of aggravated robbery, in violation of R.C.2911.01(A)(3), a first degree felony. The indictment stemmed from an incident in which Troy Queen, while an inmate at the Multi-County Correctional Center, was assaulted. As a result of the assault, Queen's spleen was injured and was removed by surgery.
 {¶ 3} A jury trial was held on April 3 and 4, 2007. The jury found Bertuzzi not guilty of aggravated robbery, but guilty of felonious assault. Subsequently, the trial court sentenced Bertuzzi to six years imprisonment on the felonious assault count. The trial court further ordered the sentence be served consecutively to the twelve month sentence imposed in Marion County Common Pleas Court Case No. 06-CR-318.
 {¶ 4} It is from this judgment that Bertuzzi appeals and asserts two assignments of error for our review. *Page 3 
 ASSIGNMENT OF ERROR NO. I DEFENDANT-APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 5} In his first assignment of error, Bertuzzi argues that the conclusion that he knowingly caused serious physical harm to Queen is against the manifest weight of the evidence. Bertuzzi argues: the prosecution argued that Bertuzzi and Weaver beat up Queen in order to take his commissary items; McFarland testified that neither Bertuzzi nor Weaver took any of Queen's commissary items; and Partlow never saw either Bertuzzi or Weaver take any commissary items. Bertuzzi further argues that Queen's testimony was not believable because: Queen claimed he was in his cell reading the bible; Queen's commissary items were not stolen but instead were lost by his gambling, and the jury acquitted Bertuzzi on the count of aggravated robbery.
 {¶ 6} In addition, Bertuzzi argues: that Inmate Thomas' opportunity to observe the assault was limited; McFarland and Partlow testified that they did not see Thomas walk by the cell; the window was covered by a towel; and Thomas did not testify that Bertuzzi knowingly caused serious physical harm to Queen. Furthermore, Weaver testified that he hurt Queen. Finally, Bertuzzi argues that while Queen testified that Weaver and Bertuzzi were punching Queen in the *Page 4 
midsection, all the other witnesses agreed that Bertuzzi did not do anything to harm Queen.
 {¶ 7} When determining whether a conviction is against the manifest weight of the evidence a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175, 485 N.E.2d 717.
 {¶ 8} Credibility determinations are primarily a matter for the trier of fact since the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility. State v.DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *7, citing State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, at *4.
 {¶ 9} Bertuzzi was convicted of felonious assault pursuant to R.C.2903.11, which provides, in pertinent part: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *." *Page 5 
 {¶ 10} Troy Queen, the victim in this case, testified that he was at the Multi-County Corrections Center in November. (T. Vol. 1, 74). Queen testified that on November 9, Bertuzzi and Weaver approached Queen and asked him for his commissary items, but Queen did not give them the commissary items. (Id. at 84-86). According to Queen, Weaver and Bertuzzi beat him up then took the commissary items. (Id.). Queen testified:
 Q. How did they beat you up?
 A. I was in my cell and they just — I mean, I thought it was a joke at first when they first came in, and they were just messing with me over it until it got serious, and they — I knew that they were hitting me hard, and then they took my commissary after.
 Q. Where did they hit you?
 A. Hit me in my stomach, my abdomen, and my back
 * * *
 Q. * * * Who was hitting you in those places?
 A. Russell Bertuzzi and Andrew Weaver.
 Q. And is there any doubt that both of them were hitting you?
 A. No, there's no doubt.
 Q. And how many times did Defendant Bertuzzi or Mr. Weaver hit you?
 A. I can't count how many times, I mean, several times.
 Q. How hard did the Defendant Russell Bertuzzi or Inmate Weaver hit you?
 A. Hard enough to hurt me.
 Q. And you could feel pain?
 A. Yes.
 Q. Could you get away?
 A. No. No, I couldn't. I mean, they had me pinned in my cell. The cells ain't very big, and when there's two of them, I mean, I was pinned, I couldn't get to the door.
(Id. at 87-88). *Page 6 
 {¶ 11} Further, Queen testified that he fell to the floor and passed out. (Id. at 89). Queen waited until lockdown at 11:00, when all the inmates are in their own cells, and used the intercom in his cell to request help. (Id. at 93-95). Initially, Queen told the corrections officers that he fell down the stairs; however, he later told them that he had gotten into a fight. (Id. at 95-96).
 {¶ 12} Queen was taken to Marion General Hospital and was later taken by ambulance to OSU Hospital in Columbus. (Id. at 99). Queen testified that he decided to have surgery; the surgery was performed; he remained at OSU for a week and a half; and then he went back to the Marion County Correctional Center. (Id. at 100-101).
 {¶ 13} On cross-examination, Queen testified that he was in his cell reading the Bible when Bertuzzi and Weaver entered his cell. (Id. at 104). Queen admitted that he gambles throwing dice and that he lost seven soups to inmate Thomas on November 8 or 9. (Id. 107-108).
 {¶ 14} Dr. David Androw, an emergency room physician at Marion General Hospital, treated Queen. (Id. at 123-124, 126). Dr. Androw testified: Queen was brought in by ambulance; he was conscious; he was very pale; and he seemed to be in pain. (Id. at 127). According to Dr. Androw, there was "free blood inside the abdominal cavity and there was injury to [Queen's] spleen", and it was determined that Queen "had a significant internal injury where one of his internal *Page 7 
organs had been injured and he was experiencing internal bleeding." (Id. at 139-140). Dr. Androw testified that helicopters could not fly that night because of fog, and as a result, Queen was taken to Columbus by a mobile intensive care unit. (Id. at 146).
 {¶ 15} Matthew Thomas testified that he was an inmate at the county jail on November 9 and he saw several people in Queen's cell. (Id. at 231, 233). Thomas testified that he walked past the cell and saw Bozo[1] and Weaver punching Troy [Queen] in the midsection. (Id. at 236). Thomas testified: "I mean, I can't — I don't know, I can't really estimate how hard, you know, because I don't know if it was — I don't know if it was like a plan, a horseplaying thing or was it really a serious, like, jump-type thing, you know, but I just know that he was getting punched." (Id. at 236).
 {¶ 16} The defense presented the testimony of Anthony Riley, an individual who was incarcerated at the Multi-County Jail on November 9, 2006. (T. April 3 4, Vol. 2, 284-285). Riley testified:
 Q. At anytime before rec, say, the hour before rec, did Mr. Thomas walk up to the second tier of the cells?
 A. No.
 Q. Was he there with you the whole time?
 A. Yeah. *Page 8 
(Id. at 286). On cross-examination, Riley testified that Thomas went up to the cell, and Thomas said that "Queen told him that they beat him up." (Id. at 287).
 {¶ 17} Josh McFarland, Jonus Partlow, and Andrew Weaver, were also in the Multi-County Jail on November 9, 2006, and testified regarding the events that occurred in Queen's cell. (Id. at 293, 317, 339). McFarland testified that he was "throwing dice" with Queen when Bertuzzi walked in the cell. (Id. at 294-295). McFarland testified that Queen lost seven soups gambling with Thomas. (Id. at 300). McFarland testified that Weaver walked in and smacked Queen on the back of his neck. (Id. at 296). According to McFarland, Queen then smacked Weaver pretty good in the back of his neck, and then Weaver turned around and punched Queen in his ribs. (Id. at 296-297). McFarland testified:
 Q. And did Mr. Queen collapse or what happened?
 A. No, then Bozo was like, put your arms up, man, it looks like you're out of breath, get your breathing back, and he threw his hands up, and I can't remember if he gave him another shot or not at that point, I can't remember that.
 Q. Okay. Well, what did Mr. Queen do after that?
 A. He went over and sat on the bunks.
 * * *
 A. On the bottom.
 Q. Bottom bunk, okay. What happened after that? A. Then that's when Bozo came over and gave him a light tap on his cheek and punched him in the knee and stepped on his foot.
 * * *
 Q. Okay. So what did — after — after Russell [Bertuzzi] went over there and punched him in the knee and gave him a tap, what did he do?
 A. He came over here, over back this way. *Page 9 
 Q. Okay. Then what happened?
 A. Then that's when Weaver came back over and —
 Q. Did Mr. Queen stand up?
 A. No, he was sitting down.
 Q. Okay. Then what happened?
 A. He gave him a couple more blows.
 Q. While he was sitting on the bed?
 A. Yeah, that kind of, I think, kind of like done him in or something.
 Q. All right. What happened next?
 A. That's when he walked out.
 Q. Who walked out?
 A. Weaver. Weaver walked out, and maybe a couple minutes, Bozo walked out, I walked out, Jonus walked out, he was in there too.
 Q. Okay. There were five — how many people were in the room?
 A. It was me, Weaver, Bozo, Jonus, and Troy [Queen], five of us.
 Q. Did you ever see Russell Bertuzzi strike Troy Queen in the left side or in the right side or anywhere?
 A. Just in his knee.
 Q. Just in his knee, that's it?
 A. Yeah, that was it.
 Q. Was it hard?
 A. What?
 Q. Did he hit him hard?
 A. I mean, just a — I mean, it was a hit, but it wasn't nothing to be like, damn, dude what the hell you doing, you know.
 Q. How about Mr. Weaver?
 A. Now that, that was — he looked like Mike Tyson, yeah. He — that was a punchout punch there. And I can recall one time that he was making some motions, like, you know what I'm saying, like he's got this awesome-ass punch, you know, like what he hit him with.
(Id. at 297-300). McFarland testified that he did not see Russell [Bertuzzi] hit Queen in the body and that Weaver and Russell [Bertuzzi] were not "both hitting *Page 10 
[Queen] at the same time, no." (Id. at 315). McFarland testified that he did not see Bertuzzi cause any damage to Queen physically and Bertuzzi did not walk out with any of Queen's commissary items. (Id. at 301-302). In addition, McFarland testified that he did not see Thomas go by the cell. (Id. at 300).
 {¶ 18} Partlow testified that Russell came in and sat down, and then Weaver came into the cell and gave Queen a little tap on the head. Then Queen just a couple body shots." Further, Partlow testified:
 Q. Weaver hit Queen?
 A. Yes.
 Q. Did Queen hit Weaver back?
 A. Yes.
 Q. Describe what happened.
 A. They — Weaver walked up to him, just a couple little body shots, threw a couple body shots on him.
 Q. Did he hit him hard?
 A. Yeah, a little, and Troy [Queen] did the exact same thing back.
 Q. Okay. Did Weaver let him do it or —
 A. Yeah, they was sitting there more or less like they was just, I don't know, me and my friends call this like going body to body, trading body shots.
 Q. What happened next?
 A. Well, Troy [Queen] kind of was stopped. After they traded their little body shots, he stopped there, Andrew [Weaver] continued, he just walked out of the cell. Russell [Bertuzzi] got up, I can't remember if he punched him in the leg or the arm, and he says, sorry to be you, and walked out of the cell.
(Id. at 321-322.). Partlow also testified that he did not see Thomas walk by the cell when the incident occurred, that the inmates hang their towels over the windows, and that the window was covered. (Id. at 334.) *Page 11 
 {¶ 19} Weaver testified that, when he entered Queen's cell, Bertuzzi, Queen, Jonus, and McFarland were there. Weaver testified that he "rednecked Mr. Queen with two fingers" on the back of his neck. (Id. at 340). According to Weaver, he was going to leave when Troy [Queen] smacked him on the back of his neck, "so I turned around and just pretty much gave it to him." (Id. at 340.) Weaver testified that he "hit him a few times", and Bertuzzi "pretty much stopped [him] from hurting the kid * * *." (Id. at 341) In addition, Weaver testified that "Bertuzzi didn't — he didn't hit the — he didn't hit Queen. I was the one who did that." (Id.) Weaver also testified that there was no towel on the cell door. (Id. at 360). Weaver testified that he pled guilty to felonious assault and was sentenced to three years in prison. (Id. at 353).
 {¶ 20} Although there is conflicting testimony regarding what happened in Queen's cell on November 9, 2006 and why the fight occurred, a conviction is not against the manifest weight of the evidence merely because there is conflicting testimony. See Haydon, 9th Dist. No. 19094, at *7, citing Gilliam, Lorain App. No. 97CA006757, at *4. At trial, both Queen and Thomas testified that both Bertuzzi and Weaver were simultaneously punching Queen, and there was testimony that Queen was seriously injured in that he underwent surgery due to an injury to his spleen. *Page 12 
 {¶ 21} After reviewing the entire record, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice when it found Bertuzzi guilty of felonious assault.
 {¶ 22} Bertuzzi's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II DEFENDANT-APPELLANT RECEIVED PREJUDICIALLY INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HIS RIGHTS UNDER SECTION 10, ARTICLE I, OHIO CONSTITUTION.
 {¶ 23} Bertuzzi argues, in his second assignment of error, that his trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of simple assault. Further, Bertuzzi argues that the ineffectiveness of his trial counsel clearly prejudiced him.
 {¶ 24} "It is well-settled that in order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense." State v. Price, 3d Dist. No. 13-05-03, 2006-Ohio-4192, ¶ 6, citing State v. Kole (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674. "To warrant reversal, the appellant must show that there is *Page 13 
a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different." Id., citingStrickland, 466 U.S. at 687.
 {¶ 25} Trial counsel's "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." State v. Griffie (1996),74 Ohio St.3d 332, 333, 658 N.E.2d 764, citing State v. Clayton (1980),62 Ohio St.2d 45, 16 O.O.3d 35, 402 N.E.2d 1189; State v. Jackson, 9th Dist. No. 22525, 2006-Ohio-523, ¶ 14, quoting State v. DuBois, 9th Dist. No. 21284, 2003-Ohio-2633, ¶ 5, citing Griffie, 74 Ohio St.3d at 333.
 {¶ 26} In the present case, the fact that Bertuzzi's trial counsel did not request an instruction on a lesser-included offense was merely a matter of trial strategy, and did not constitute ineffective assistance of counsel. In addition, Bertuzzi has failed to show a reasonable probability that but for his trial counsel not requesting the instruction, that the results of the proceeding would have been different. Accordingly, we find that Bertuzzi's second assignment of error is overruled.
 {¶ 27} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 ROGERS, P.J., and SHAW, J., concur. r
[1] From the record it is clear that Bozo is Bertuzzi's nickname. (T. April 34, Vol. 1, 218). *Page 1