OPINION *Page 2 
{¶ 1} Defendant-appellant, John E. Ward (hereinafter "Ward"), appeals the Tiffin Municipal Court, Seneca County, judgment of conviction and imposition of sentence. For reasons that follow, we affirm.
 {¶ 2} On June 2, 2007, Ward and his family attended a graduation party. Following the party, Ward's wife, Stephanie, returned home from a friend's residence. At that time, Ward and Stephanie began a heated argument over watching the children. Ward then entered his car and drove away. Stephanie Ward, Gabriella Barnes, Shelby Ward, and Johnny Ward remained at the home.
 {¶ 3} A few minutes later, Ward returned home to take his son, Johnny, with him. Stephanie attempted to prevent Ward from taking Johnny, but Ward grabbed her by the throat and threw her out of his way. As Ward was taking Johnny to his car, Stephanie was grasping Johnny's arm trying to hold him back. Stephanie fell over on the ground and Barnes, Ward's step-daughter, kicked her in the leg. Ward, Barnes, and Johnny entered the car and drove away. Shortly thereafter, the police arrived at the scene and took sworn statements from the witnesses.
 {¶ 4} On June 3, 2007, the State of Ohio filed a complaint against Ward alleging one count of domestic violence in violation of R.C.2919.25(A), a first *Page 3 
degree misdemeanor. On June 11, 2007, Ward was arraigned and entered a plea of not guilty.
 {¶ 5} On June 28, 2007, a jury trial was held wherein Ward was found guilty. The trial court sentenced Ward to one hundred eighty (180) days in jail with one hundred forty (140) days suspended and two years of community control. The trial court also ordered Ward to pay a fifty dollar fine and court costs.
 {¶ 6} On July 12, 2007, Ward filed a motion to suspend the execution of his sentence pending appeal with the trial court, which was subsequently denied on July 13th. On July 12th, Ward also filed his appeal to this Court.
 {¶ 7} Ward now appeals and asserts four assignments of error for review. We have combined Ward's first and second assignments of error for analysis.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING EVIDENCE OF PRIOR BAD ACTS, THEREBY VIOLATING APPELLANT'S RIGHT OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL.
 {¶ 8} In his first assignment of error, Ward argues that the trial court erred in admitting evidence of his prior bad acts for the purpose of showing conformity *Page 4 
therewith on the date of the alleged domestic violence. In his second assignment of error, Ward argues that the trial court erred in denying his motion for mistrial since the trial court's admission of character evidence was highly prejudicial. We disagree.
 {¶ 9} A trial court has discretion to determine whether to admit or exclude evidence. Krischbaum v. Dillion (1991), 58 Ohio St.3d 58, 66,567 N.E.2d 1291. As such, we will not disturb the trial court's decision on that issue unless the trial court abused its discretion. Id. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 10} Ward argues that the state elicited the following improper character evidence on re-direct of Shelby Ward, Ward's biological daughter:
 Q: Yes, Your Honor. Shelby, uhm, is your dad a pretty controlling individual?
 A: Yes.
 Q: What types of aspects of life does he try and control?
 A: He likes to control people. He likes to have control over people. He likes to know that people aren't gonna go after him in the end of his little story. When he, like, goes
 Mr. Klepatz: Objection, Your Honor. This is past acts.
 Mr. Alt: It was introduced as to, uhm, dad's character a little bit through the cross.
 The Court: Overruled. Overruled. Give me (inaudible).
 The Witness: Dad liked to control people, like, he liked to know when — where people went and if they were actually there and where they were and what time they were there and what time they were gonna be back, exactly what time. He had to know. He had to have control over people. *Page 5 
 Mr. Alt:
 Q: Whatever happened if he didn't have control?
 A: He got very upset.
 Q: How would he get upset?
 A: He'd get really mad and start yelling and screaming and start cussing out people.
 Q: Would it be children, too? Did that ever happen to you?
 A: (No audible response.)
 Q: Did he ever get physical outside of just verbally (inaudible)?
 Mr. Klepatz: Objection, Your Honor. That would definitely be past acts and not proper impeachment.
 Mr. Alt: Well, I mean, we brought up Stephanie Ward's, uhm, pattern of violence. He asked if dad could chase her down and some of those aspects due to his leg injury.
 Mr. Klepatz: Your Honor, again, this is not the proper impeachment. This goes to — 
 The Court: Overruled. You can answer the question.
 The Witness: What was the question again?
 Mr. Alt:
 Q: I asked if your dad had ever been physical with you versus just merely verbal?
 A: Yes.
 Q: How — how has he been physical with you?
 A: He's thrown me against the walls before and he's stuck a fork in me.
 Mr. Klepatz: Your Honor, I'm gonna ask for a mistrial.
 The Court: Mr. Klepatz, overruled.
(June 28, 2007 T. at 80-82).
 {¶ 11} Were this testimony viewed in isolation, as Ward would have us do, his argument would be more persuasive. Evid. R. 404(A) provides:
 (A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion * * * *Page 6 
Evid. R. 404, however, provides for several exceptions for the use of prior bad acts "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(B) (emphasis added). Subsection (B)'s examples of proper uses of prior crimes, wrongs, or bad acts in evidence is not an exclusive or exhaustive list. State v. Nucklos, 171 Ohio App.3d 38,2007-Ohio-1025, 869 N.E.2d 674, ¶ 86; State v. Rawls, 10th Dist. No. 03AP-41, 2004-Ohio-836, fn.2. One proper use of such evidence not explicitly mentioned in Evid.R. 404(B) is when it is offered to rebut allegations of fact raised by the defendant. See State v. Banks (1991),71 Ohio App.3d 214, 219-20, 593 N.E.2d 346, citing State v. Kamel
(1984), 12 Ohio St.3d 306, 312, 466 N.E.2d 860; State v. Strobel (1988),51 Ohio App.3d 31, 36, 554 N.E.2d 916.
 {¶ 12} When viewed in the context of defense counsel's prior cross-examination, it is apparent that the above testimony was not offered "for the purpose of proving action in conformity therewith"; rather, it was offered to rebut the defendant's allegation that he was physically incapable of committing the act. On cross-examination, defense counsel asked Shelby the following questions:
 Q: All right. Now, you — you — you acknowledge that, uhm — uhm, your dad has a problem with his leg, right? And his leg is out stiff straight, his left one, all the time; isn't that right?
 A: Yes.
 Q: And he has a hard time walking?
 A: Yes.
 Q: Uhm, he — he doesn't chase you down or run after you by any chance, does he? *Page 7 
 A: Yes, he's done that —
 Q: He does?
 A: Oh, he's done that a few times.
 Q: Run after you with his leg?
 A: Yes, he's run after me.
 Q: Okay. So you're saying that he's able to go fast with his leg?
 A: Not exactly running fast, but he can — he can go after people.
 Q: Okay. He can walk fast?
 A: Yeah.
 Q: Is that what you're saying? But anybody could outrun him, couldn't they?
 A: Yeah.
 Q: All right. And you could outrun him? Uhm, do you think Stephanie could outrun him?
 A: No.
 Q: No, she can't?
 A: She loses her balance too much.
(June 28, 2007 T. at 74-75). Therefore, we agree with the State that Shelby's testimony as to Ward's prior physical altercations was not offered to show conformity therewith on June 2, 2007; rather, it was offered to show that Ward was physically capable of committing the offense notwithstanding his allegations of physical disability. Since Ward raised this issue on cross-examination, he cannot now allege that the prosecution's rebuttal to the same is inappropriate. SeeBanks, 71 Ohio App.3d at 219-20, citing Kamel, 12 Ohio St.3d at 312;Strobel, 51 Ohio App.3d at 36.
 {¶ 13} Since the State did not submit the evidence of Ward's prior acts for purposes of showing conformity therewith on June 2, 2007, we cannot say that the trial court abused its discretion by admitting the evidence. Since the trial court did *Page 8 
not err in admitting the evidence, it also did not err in denying Ward's motion for a mistrial.
 {¶ 14} Ward's first and second assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY ON THE CHARGES.
 {¶ 15} In his third assignment of error, Ward argues that the evidence was insufficient to sustain a guilty verdict. Specifically, Ward argues that the State has failed to show evidence of physical harm, since there was no evidence linking Stephanie's leg injury to Ward, and Stephanie admitted that she had prior bruises. The State, on the other hand, argues that there was sufficient evidence to show physical harm, since the testimony demonstrated that Ward grabbed the victim by the throat and threw her to the ground. We agree with the State.
 {¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio *Page 9 
St.3d 89, 684 N.E.2d 668. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 17} The crime of domestic violence is codified in R.C. 2919.25(A), which provides: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." `"Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 18} Ward does not allege that the State failed to prove either that Stephanie was a family member or that Ward acted `knowingly' as required under R.C. 2919.25(A). Rather, Ward alleges that the State failed to show `physical harm' because the State failed to link Stephanie's leg injuries to Ward. Ward is correct to argue that the State failed to show that he caused the leg injuries. In fact, the record indicates that Gabriella Barnes, Ward's step-daughter, kicked Stephanie. (June 28, 2007 T. at 65, 102). However, the State did provide evidence that Ward grabbed Stephanie by the throat and threw her down to the ground. Shelby Ward testified:
 Q: And then John Ward left and came back?
 A: He parked the car and went in there — went in the house, and then I heard mom, Stephanie Ward, yelling. And I went in there and I started crying because I saw dad take her by the throat *Page 10 and throw her against the table, the end table, and then take her by her arm and throw her against the T.V. And then, yeah, Gabby kicked her in the leg.
 Q: Can you show, on yourself, how was your mother grabbed?
 A: Like this. Like, by his arm and then, like, thrown against the end table.
 Q: With one arm?
 A: Yeah.
 Q: And did she fall to the ground?
 A: Yeah, it — she hit her head on the end table.
 Q: Did she get right back up — get back —
 A: No.
 Q: — up right away?
 A: No, she — no, dad threw her against the T.V., the big screen T.V., took her by the arm and threw her against the T.V.
 Q: How did he grab her by the arm and threw her against the T.V.
 A: Like, her wrist; yanking her — threw her to the T.V.
 Q: Was it a-just a little push — or
 A: No, it was a, like, a big yank onto the wrist.
(Id. at 65-66).
 {¶ 19} Ward testified about the events of June 2, 2007 as follows:
 A: I went-what happened was I got out of the car and went in to get [Johnny]. [Stephanie] was already in there. I got hold of my son. He was sitting there playing, uhm, a game cube. I got Johnny. She reached and grabbed me and fell because of her — because she had balance problems. She supposed to be having a cane. She fell but I had my son, and then she kept trying to grab him. And I got out the door with him; she kept trying to get a hold of him and I don't know what happened after that. I got — made it to the car.
 Q: Did you grab her and push her down?
 A: No.
 * * *
 Q: Did you ever go after Stephanie?
 A: No. *Page 11 
(Id. at 150-51). On cross-examination, Ward testified that his daughter Shelby has "exaggerated a lot of things before." (Id. at 157). When asked how the T.V. was moved, Ward testified, "I don't know. She may have fell." (Id. at 158). Ward was also unclear on whether Shelby was even in the room when the incident occurred. (Id. at 157). When the State pressed Ward on further cross-examination, Ward said, "* * * all I know is I didn't do nothing to hurt her or I didn't try to hurt her." (Id. at 161).
 {¶ 20} Consequently, the record did contain evidence from which a rational trier of fact could conclude that Ward physically harmed or attempted to harm Stephanie on June 2, 2007. Although Ward denied the allegation, creating conflicting evidence in the record, credibility determinations and the weighing of evidence are for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 21} Ward's third assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV THE FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 22} In his fourth and final assignment of error, Ward argues that the jury's finding of guilt was against the manifest weight of the evidence. We disagree. *Page 12 
 {¶ 23} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses.DeHass, 10 Ohio St.2d at 231. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Bertuzzi, 3d Dist. No. 9-07-13,2007-Ohio-6236, ¶ 8, citing State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *7, citing State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, at *4.
 {¶ 24} In addition to the testimony of the eyewitness, Shelby Ward, that Ward grabbed Stephanie by the throat and threw her against the end table and grabbed Stephanie by the arm and threw her into the T.V., the jury also heard testimony from two other family members corroborating Shelby's testimony. *Page 13 
(June 28, 2007 T. at 65-66). Stephanie's daughter, Vanessa Barnes, was outside of the house during the incident and testified she:
 * * * heard noises like there was some kind of wrestling around going on inside, uhm, yelling and screaming. I heard mom screaming a lot and the next thing I knew Shelby was running out towards my car and jumped in the back seat of my car. She was shaking, crying, screaming that they were hurting mom. She was repeating they were hurting mom a lot.
(Id. at 89). John Hoover, Vanessa Barnes' fiancé, was at the scene with Vanessa and testified:
 I heard some yelling (inaudible). I hear Shelby screaming after she had (inaudible) the two of them. She comes out screaming that, "Daddy's hurting mom."
 So, I get out of the car, walk up to the stairs. I see John [Ward] pulling out little Johnny by his, I believe, it was his right arm and Stephanie's got a hold of his left arm. Gabby then — which is Vanessa's sister — kicked Stephanie in the back of the leg and pushed her down the stairs, and tells her to get out. John keeps pulling on Johnny towards the car. Stephanie has both hands on him trying to pull him back saying, "Don't take my baby. Don't take him."
 John proceeds to continuously call her a whore, a slut, all kinds of derogatory names, keeps pulling him towards the car. *
 * *
(Id. at 102).
 {¶ 25} Officer Eric Aller of the Tiffin Police Department also corroborated Shelby's testimony. Officer Aller arrived on the scene and observed that a sixty inch big screen T.V. had been moved, along with a bench, and pictures were on the floor. (Id. at 114). *Page 14 
 {¶ 26} Ward, on the other hand, denied grabbing Stephanie and throwing her to the ground; however, he did admit that Stephanie "may have fell" during the incident. (Id. at 158). Later, Ward testified "all I know is I didn't do nothing to hurt her or I didn't try to hurt her." (Id at 161). Even though these statements did not constitute admissions, a conflict in the testimony alone does not mean Ward's conviction is against the manifest weight of the evidence. Bertuzzi, 2007-Ohio-6236, at ¶ 8, citing Haydon, 9th Dist. No. 19094, at *7, citingGilliam, Lorain App. No. 97CA006757, at *4.
 {¶ 27} Upon review of the entire record, we conclude that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice; thus, the conviction is not against the manifest weight of the evidence.
 {¶ 28} Ward's fourth and final assignment of error is, therefore, overruled.
 {¶ 29} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur. *Page 1