[Cite as *State v. Barnes*, 2019-Ohio-2634.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 8-18-67

      v.

FRANK V. JOHNATHAN BARNES,        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 18 05 0143

Judgment Affirmed

Date of Decision: July 1, 2019

APPEARANCES:

    *Addison M. Spriggs* for Appellant

    *Alice Robinson-Bond* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Frank Barnes ("Barnes"), brings this appeal from the December 6, 2018, judgment of the Logan County Common Pleas Court sentencing him to an aggregate ninety (90) months in prison after Barnes was convicted in a jury trial of Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree, Abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, Disrupting Public Services in violation of R.C. 2909.04(A)(1),[1] a felony of the fourth degree, Intimidation of an Attorney, Victim, or Witness in a Criminal Case in violation of R.C. 2921.04(B)(1), a felony of the fourth degree, and Menacing by Stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree. On appeal, Barnes argues that he received ineffective assistance of counsel, that the cumulative errors caused by his ineffective counsel deprived him of a fair trial, and that there was insufficient evidence presented to convict him of Domestic Violence.

*Relevant Facts and Procedural History*

{¶2} A seven count indictment was filed against Barnes on May 8, 2018, alleging that Barnes had committed (Count 1) Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree due to Barnes having a prior conviction for domestic violence or a crime substantially similar, (Count 2)

---

[1] There were actually two counts of Disrupting Public Services but they merged for purposes of sentencing.

Abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, (Count 3) Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, (Count 4) Disrupting Public Services in violation of R.C. 2909.04(A)(1), a felony of the fourth degree, (Count 5) Disrupting Public Services in violation of R.C. 2909.04(A)(3), a felony of the fourth degree, (Count 6) Intimidation of an Attorney, Victim, or Witness in a Criminal Case in violation of R.C. 2921.04(B)(1), a felony of the third degree, and (Count 7) Menacing by Stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree.

{¶3} Five of the seven charges (Counts 1-5) stemmed from an incident that occurred on April 7, 2018. At that time, it was alleged that Barnes lived with his girlfriend in this matter, Ashley D. ("Ashley"). Ashley's two children also lived in the residence. Due to issues Ashley had with Barnes's drinking in the past, when she returned home shortly before midnight on April 6, 2018, and noticed Barnes had been drinking liquor, she poured the last quarter of the bottle that he had been drinking down the sink drain. Barnes then strangled Ashley in the kitchen to the point that she passed out.[2]

{¶4} Ashley recalled regaining consciousness on the floor of the kitchen shortly thereafter. She then went into her bedroom to get her phone to call the police, but Barnes followed her and took her phone from her so that she could not

---

[2] The State alternatively charged Barnes with Domestic Violence for the choking incident and Felonious Assault. The Felonious Assault charge alleged that Barnes had caused substantial temporary incapacity.

call for emergency assistance. Barnes also prevented her from leaving the bedroom by following her around and blocking the door. Ashley eventually exited the bedroom and Barnes attempted to prevent her from leaving the house by following her and blocking the front door, but Ashley ran out the back door and went to a neighbor's house. There she had the neighbor call 911. Police and paramedics responded to the scene. An officer noted red marks on Ashley's neck consistent with her story. Barnes fled the area before police arrived.

{¶5} The Intimidation charge (Count 6) stemmed from a phone call Barnes made to Ashley on April 23, 2018, when he had still not been located by law enforcement. During the call Barnes threatened to harm or have someone else harm her if she proceeded with the case.

{¶6} The Menacing by Stalking charge (Count 7) stemmed from a series of incidents of Barnes inflicting violence against Ashley or threatening violence against her over a period of time. The series of incidents included one prior conviction of Barnes against Ashley.

{¶7} Barnes pled not guilty to all of the charges against him.

{¶8} On October 23-24, 2018, Barnes proceeded to a jury trial. The State presented the testimony of five witnesses including the victim, Ashley. The defense presented the testimony of five witnesses and then rested its case. The jury returned

guilty verdicts on six of the seven counts against Barnes, acquitting him of (Count 3) Felonious Assault.

{¶9} On December 3, 2018, the matter proceeded to sentencing. Barnes was ordered to serve eighteen months in prison on Count 1, Domestic Violence, thirty-six months in prison on Count 2, Abduction, consecutive to each other. The trial court found that Counts 4 and 5 of Disrupting Public Services merged for sentencing and the State chose to proceed to sentence on Count 4. Barnes was ordered to serve 12 months in prison on Count 4, concurrent with Count 2. As to Count 6 and the Intimidation charge, Barnes was ordered to serve thirty-six months in prison, consecutive to the prison terms in Counts 1 and 2. Finally, Barnes was ordered to serve twelve months in prison on Count 7, Menacing by Stalking, concurrently with the other counts. Barnes thus received an aggregate ninety month prison term for the crimes in this case; however, they were ordered to be served consecutive to a separate prison term Barnes had received in another matter from Logan County.

{¶10} A judgment entry memorializing Barnes's sentence was filed December 6, 2018. It is from this judgment that Barnes appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Mr. Barnes was deprived of his right to the effective assistance of trial counsel when trial counsel was late to trial twice, failed to timely call witnesses, placed a witness on the stand who was unable to testify, and failed to object throughout the trial.**

**Assignment of Error No. 2**
**Frank Barnes's right to a fair trial and due process of law were**
**violated by the cumulative errors that occurred during his trial.**

**Assignment of Error No. 3**
**Mr. Barnes's conviction for domestic violence under R.C. 2919.25**
**is not supported by sufficient evidence[.]**

{¶11} Due to the nature of the discussion we elect to address the assignments of error out of the order in which they were raised.

*Third Assignment of Error*

{¶12} In Barnes's third assignment of error he argues that there was insufficient evidence presented to support his conviction for Domestic Violence.[3] Specifically, he argues that there was no evidence of "physical harm" in this matter.

Standard of Review

{¶13} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

---

[3] Barnes makes no argument challenging any of his other convictions and does not mention them in his assignment of error, therefore we will not address them.

Controlling Authority

**{¶14}** In this case Barnes challenges his conviction for Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree due to a prior conviction. Domestic Violence as charged is codified in R.C. 2919.25(A), and reads, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶15}** Barnes focuses his argument on appeal specifically on the element of "physical harm," contending that there was insufficient evidence for a rational trier of fact to find that the element had been proven beyond a reasonable doubt. Revised Code 2901.01(A)(3) defines "Physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

Relevant Evidence Presented

**{¶16}** At trial, Ashley testified that she had a relationship with Barnes for approximately three years, and that they lived together on two separate occasions at her residence, including at the time of this alleged domestic violence incident. Ashley testified that initially the relationship was fine but as Barnes began drinking more frequently they argued.

**{¶17}** Ashley testified that on April 6, 2018, she got a babysitter for her kids and that her and Barnes went to play bingo in Bellefontaine from approximately 7

p.m. to 10 p.m. She testified that after bingo she dropped Barnes off at their house with Ashley's children, then drove the babysitter home.

{¶18} Ashley testified that when she returned home, Barnes was being loud and obnoxious and he had been drinking. She testified that she asked Barnes to turn the television down since the children were sleeping. She then saw a bottle of liquor that Barnes was drinking, which was three-quarters empty, and she took it and poured out the remainder of the bottle in the sink.

{¶19} At that point, Ashley testified that Barnes came up to her and choked her, wrapping his hand around her throat.[4] Ashley testified that Barnes began squeezing, that she tried to get his hands off her neck, that she was flailing, and gasping for air. She testified that she went unconscious and "came to" on the floor.[5] Eventually Ashley got out of the house, ran to a neighbor's residence, and 911 was called.

{¶20} An officer that responded to the scene, Jared Willoby of the Bellefontaine Police Department, testified that when he arrived Ashley was distraught and upset, and that she had a slight redness on the left part of her neck below her jaw. Officer Willoby testified that he did not take pictures of the injuries

---

[4] Barnes would challenge Ashley's story as being inconsistent, as she stated initially that Barnes had used both hands, then later said it was just one hand at trial.

[5] The incident in the residence continued, leading to other charges, but we focus on the specific Domestic Violence aspect here. Further, we note that the phrase "came to" was used by the prosecutor rather than Ashley.

because he did not think the redness would show up on the camera. Ashley testified that she had bruises on her neck where Barnes's fingers were days after the incident.

{¶21} Although not presented in the State's case, the defense presented the testimony of John Matt, an EMT who responded to the scene. Matt testified that Ashley complained of neck pain at the scene but he did not see any marks on her, adding, "but we're not a mobile emergency room." (Tr. at 349).

Analysis

{¶22} At the outset of our analysis we note that Barnes does not argue on appeal that the State presented insufficient evidence that he was a family or household member to support his Domestic Violence conviction; rather, he focuses his argument solely on the "physical harm" element.

{¶23} As to the purported physical harm in this case, Ashley testified that Barnes choked her, wrapping his hand around her neck. Ashley testified that she was choked to the point that she lost consciousness. She testified that the incident left bruises for days after, and an officer noted red marks on her neck shortly after the incident when he responded.

{¶24} Physical harm, as defined, includes any injury no matter how slight. The testimony presented would consist of *at least* a slight injury. *See State v. Torman*, 3d Dist. Putnam No. 12-15-10, 2016-Ohio-748, ¶¶ 31-32 (concluding that the victim's testimony that the defendant squeezed the victim's chin and jaw

resulting in minor bruising was sufficient evidence of physical harm); *State v. Ward*, 3d Dist. Seneca No. 13-07-21, 2008-Ohio-84, ¶¶ 15-21 (concluding that testimony from a witness that the defendant "grabbed the victim by the throat and threw her to the ground" was sufficient for a rational trier of fact to conclude that the physical harm element of R.C. 2919.25(A) was met); *State v. Summers*, 11th Dist. Ashtabula No. 2002-A-0074, 2003-Ohio-5866, ¶ 31 (noting that the physical harm element of R.C. 2919.25(A) was satisfied despite the victim's failure to seek medical treatment and the absence of corroborating evidence regarding the victim's injuries because the jury believed the victim's testimony regarding the minor bruising and "soreness" or "stiffness" she suffered).

**{¶25}** Nevertheless, as this Court has noted in previous opinions, " 'R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely *attempting* to cause physical harm to a family [or household] member.' " *State v. Jackson*, 3d Dist. Seneca No. 13-18-18, 2019-Ohio-170, ¶ 59, citing *State v. Nielsen*, 66 Ohio App.3d 609, 612, 585 N.E.2d 906 (6th Dist.1990). Thus even if the jury found somehow that there was no physical harm in this matter, they still could have found there was an attempt to cause physical harm through the choking. Regardless, the State presented sufficient evidence to convict Barnes of Domestic Violence as indicted.

{¶26} We would note that on appeal, Barnes focuses part of his argument challenging the sufficiency of the evidence on the testimony of a defense witness, the EMT who responded to the scene. The EMT testified that he did not see any red marks on Ashley's neck. While Barnes may feel this contradicts the State's evidence, to the extent that it did (at all), that would be a question of weight of the evidence for the jury to determine, not sufficiency, and Barnes has not raised a challenge to the weight of the evidence.[6] Regardless, even if he did, we could not find that the jury clearly lost its way in this matter in convicting him based on the evidence presented.

{¶27} For all of these reasons, Barnes's third assignment of error is overruled.

*First Assignment of Error*

{¶28} In Barnes's first assignment of error, he argues that he received ineffective assistance of counsel. Specifically, he argues that his counsel was ineffective for failing to object to certain "other acts" testimony that he believes should have been precluded under Evid.R. 404, that his counsel was ineffective for failing to arrive to court "on time" both days of trial, that his counsel failed to appropriately manage witnesses, and that counsel was ineffective for calling a witness to the stand whose testimony would have violated the rules of evidence.

---

[6] The same would be true for Barnes's claim that Ashley's story was inconsistent, that she was jealous, and that she had a motive to lie.

Standard of Review

**{¶29}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**{¶30}** We note that a tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Timm*, 3d Dist. Seneca No. 13-11-23, 2012-Ohio-410, ¶ 31. "Furthermore, trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Turks,* 3d. Dist. Allen No. 1–08–44, 2009–Ohio–1837, ¶ 43, citing *State v.*

*McKinney,* 11th Dist. Trumbull No.2007–T–0004, 2008–Ohio–3256, ¶ 191; *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 103.

Analysis

**{¶31}** Barnes contends his counsel was ineffective on a number of issues. We will address each in turn.

"Other Acts" Evidence

**{¶32}** Barnes first argues that his trial counsel was ineffective for failing to object to what he claims was improper "other acts" evidence that should have been precluded under Evid.R. 404(B), which reads as follows.

> **(B) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.**

**{¶33}** In this case, Barnes argues that his counsel failed to object to multiple portions of testimony that he claims were introduced to show his bad character and establish that he acted in conformity with that bad character. Specifically, he argues that his counsel failed to object to testimony regarding his alcohol and drug use, testimony regarding an incident with Ashley that led to a civil protection order being filed against him, testimony regarding instances of Barnes throwing beer bottles at

-13-

Ashley, and testimony regarding instances involving Ashley being slapped by Barnes.

**{¶34}** The State responds by contending that the majority of the incidents of testimony that Barnes argues were improper were actually part of the incidents that led to the charge of Menacing by Stalking and thus were part of the elements, or the *res gestae*, of the crime.  The State argues that the testimony regarding the incident leading to the civil protection order, the testimony regarding the slapping, and the testimony regarding the thrown beer bottles were all direct evidence that Barnes made an ongoing threat of physical harm or caused physical harm or mental distress to Ashley, supporting the Menacing by Stalking charge.  We agree.

**{¶35}** Menacing by Stalking pursuant to R.C. 2903.211(A)(1) reads as follows.

> **No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.**

In the bill of particulars, the State alleged that the incident leading to the civil protection order where Barnes dragged Ashley out of her car, the incident where Barnes threw beer bottles at her, the incident where Barnes slapped Ashley, and the incident where Barnes and Carmen M. purportedly threatened Ashley all led to the Menacing by Stalking charge.  Ashley testified at trial regarding all these incidents.

Because the State was attempting to prove Menacing by Stalking through these incidents, the evidence supporting the elements would be admissible, and would not be improper "other acts" evidence.[7] *See State v. DiCarlo*, 4th Dist. Scioto No. 09CA3301, 2010-Ohio-3759, ¶ 19.

**{¶36}** As to the drugs and alcohol testimony, the State presented this evidence partially to explain the deterioration of the relationship between Barnes and Ashley, and it is involvement with alcohol that led to the incident on April 7, 2018. Thus again, it could be admissible as simple background to the incident.

**{¶37}** Nevertheless, even if trial counsel should have objected to the drug and alcohol testimony, and even assuming *arguendo* it was inadmissible, we cannot find that any failure to object here was prejudicial as the defense's trial strategy was not to paint Barnes as a "saint," but rather to paint Ashley as jealous of Barnes's other relationship with Carmen M., and to paint Ashley as a liar, particularly when it came to making purportedly false allegations against men for being violent in the past.

**{¶38}** Therefore we cannot find that Barnes's counsel was ineffective for failing to object to any of the purported "other acts" testimony, or that even if he

---

[7] Perhaps Barnes's argument would be more properly directed to contending that his trials for various incidents should have been severed. We emphasize that we are not stating such an argument would have been successful, but it more logically follows the argument he is attempting to make here.

was ineffective, that any failure would have been prejudicial in this matter. Thus this argument fails under both prongs of *Strickland*.

Trial Counsel Arriving Late and Timeliness of Witness Arrival

{¶39} Barnes next argues that his trial counsel was ineffective for being late both days to the trial, and for failing to have two of his witnesses present at a more convenient time so the trial could continue without a short break.

{¶40} The issue regarding timeliness was first mentioned in the record near the end of the trial on the second day, outside of the presence of the jury at a sidebar. On the second day of the trial, the defense began its case by questioning its first three witnesses. At the conclusion of the third witness's testimony, defense counsel indicated that he was surprised the three witnesses' testimony went so quickly, and the next two witnesses were not scheduled to arrive under subpoena for another twenty minutes.

{¶41} At that time, the trial court stated that tardiness was becoming a problem with defense counsel. The trial court noted its displeasure with all of defense counsel's timing in the trial, stating that defense counsel had apparently been late both days to trial, though this was not made clear earlier in the transcript. The trial court was also troubled by defense counsel causing further delay by not properly anticipating the length of testimony of witnesses. As a result of defense

counsel's actions, the trial court held defense counsel in contempt, and fined him $50. Court then recessed until the defense witnesses arrived.

{¶42} While trial counsel's tardiness may have been unprofessional, it did not prevent the defense from presenting its case in this matter, and as far as the record is concerned there is no indication that the jury was aware that any slight delay in starting either day was the result of defense counsel. Similarly there is no indication that the jury was aware that any twenty minute break that was taken on the second day of trial was attributable to the defense counsel. Regardless, trial counsel was punished for being late, and there is absolutely no indication whatsoever that it impacted the trial, or would have prejudiced the jury against Barnes. In fact, the jury was discerning enough to acquit Barnes of the Felonious Assault charge.

Trial Counsel's Management of Witnesses

{¶43} Finally, Barnes argues that trial counsel failed to call "appropriate" witnesses to the stand. More specifically, Barnes argues that defense counsel attempted to introduce the testimony of one of Ashley's ex-boyfriends who would purportedly testify that Ashley had made a false allegation about him regarding domestic violence in the past. Defense counsel also attempted to call a children's services investigator, *at Barnes's request*, to testify regarding a children's services

investigation that had taken place in the past regarding Ashley. The trial court prevented this testimony as being extrinsic and irrelevant.

**{¶44}** Notably, as to the children's services investigation, defense counsel actually stated he did not feel he could properly present the evidence but his client wished him to call the witness. We can find no ineffective assistance of counsel there. *See* (Tr. at 356). As to Ashley's ex-boyfriend, defense counsel did enter the testimony of a separate male who claimed that Ashley had made improper accusations in the past. Thus we see no ineffective assistance of counsel here for defense counsel's attempt to enter additional testimony.

**{¶45}** Nevertheless, even assuming counsel should have been more diligent, there is simply no showing of *any* prejudice here. In fact, trial counsel secured an acquittal on the most serious charge against Barnes. While Barnes may wish to have a second attempt to try a different strategy, we will not second-guess the trial strategy of an attorney who is presumed to be competent, particularly where the record demonstrates absolutely no prejudice. Therefore, for all these reasons, Barnes's first assignment of error is overruled.

*Second Assignment of Error*

**{¶46}** In Barnes's second assignment of error, he argues that the cumulative impact of the errors by trial counsel in this case warrant a new trial. While numerous errors presenting minimal prejudice can be combined to deprive a defendant of a

fair trial, there are not multiple errors in this case, and even if we found in the second assignment of error that counsel was deficient, there is *no* demonstrable prejudice in this matter, thus there is no accumulation of prejudice, particularly any prejudice of significance to overturn the jury's verdict. *See State v. Holton*, 3d Dist. Holton Logan No. 8-17-02, 2017-Ohio-6934, ¶¶ 51-52, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), at syllabus. Therefore, Barnes's second assignment of error is overruled.

### *Conclusion*

**{¶47}** For the foregoing reasons Barnes's assignments of error are overruled and the judgment of the Logan County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**