[Cite as *State v. Timm*, 2012-Ohio-410.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO. 13-11-23

      v.

JOSHUA R. TIMM,                       O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 10-CR-0118

Judgment Affirmed

Date of Decision: February 6, 2012

APPEARANCES:

    *John M. Kahler, II* for Appellant

    *Derek W. DeVine and Rhonda L. Best* for Appellee

**WILLAMOWSKI, J**.

{**¶1**} Defendant-Appellant, Joshua R. Timm ("Timm"), appeals the judgment entry of the Seneca Court County Court of Common Pleas, sentencing him to prison after a jury found him guilty of unlawful sexual conduct with a minor. On appeal, Timm contends that there was insufficient evidence to support the verdict; that the decision was against the manifest weight of the evidence; that he was denied effective assistance of counsel; and that the trial court committed plain error by not allowing evidence of his previous acquittal or mistrial to be heard by the jury. For the reasons set forth below, the judgment is affirmed.

{**¶2**} On July 14, 2010 the Seneca County Grand Jury issued a three-count indictment against Timm, charging him with engaging in sexual conduct with a minor in violation of R.C. 2907.04(A), felonies of the fourth degree.[1] Count One of the indictment alleged digital penetration, Count Two alleged fellatio, and Count Three alleged the insertion of his penis into the minor's vagina.

{**¶3**} The minor ("A.W." or "the victim") was fourteen years old when she attended a bonfire party with several of her teenage friends at the home of Timm's sister in June of 2009. A.W. was friends with Timm's sister and planned to stay

---

[1] The original indictment stated that offenses occurred on or about June 27, 2009. On October 1, 2010, the indictment was amended to state that the offenses occurred on or about June 28, 2009, to reflect that the incidents occurred later that night, after midnight.

overnight after the party. Timm, who also was staying at the home, was twenty-three years old at the time. A.W. had not known Timm prior to this party.

{¶4} A jury trial was held in October of 2010. That trial resulted in acquittals on Counts One and Two. The jury was unable to reach a unanimous verdict on Count Three and the trial court declared a mistrial on that count.

{¶5} A subsequent jury trial on Count Three was held on April 14 and 15, 2011. At the second trial, the State presented testimony from five witnesses: A.W.; Detective Sergeant Kevin Reinbolt ("Detective Reinbolt"); the SANE nurse who examined A.W.; an expert witness from Ohio's Bureau of Criminal Investigation ("BCI"); and an expert witness from the DNA testing laboratory. The State also submitted several exhibits, including the detective's report, the nurse's examination report, and the results of the laboratory and DNA testing.

{¶6} A.W. testified that throughout the evening at the party, she spent time with Timm, joking around with him by grabbing his hat and sitting on his lap by the bonfire. At some point late that night, she fell asleep on a couch while watching television with Timm and others, including Timm's two young children. (Tr., p. 194-196.) When she woke up, she was on the couch with Timm, and he was fondling her under the blanket. (Tr., p. 166.) Timm then said he was going out to the garage for a cigarette and asked her to meet him there in about five minutes. (Tr., p. 167.)

{¶7} A.W. went to the garage and she and Timm talked for a while. He listened while she told him about problems she was having in her life. Timm told A.W. how beautiful she was and that she was a "special person." (Tr. p. 168.) A.W. testified that Timm made her feel good about herself, that he made her feel comfortable with him, and that he made her feel like she could trust him. (Id.) After they talked for a while longer, they kissed, and then he unzipped his pants and asked A.W. to perform oral sex on him, which she did. (Id.) Then he unzipped and pulled down her shorts, bent her over, put his penis inside her vagina, and had sex with her. (Id.)

{¶8} After A.W. went home, her father questioned her about what had happened at the party because some of A.W.'s friends had alerted her father that something had occurred between A.W. and Timm. A.W. acknowledged that she didn't tell her parents about everything at first because she was afraid and embarrassed to tell them the entire truth and worried about what they would think of her. (Tr. pp. 171-172.)

{¶9} After A.W. eventually disclosed everything that had occurred, her parents took A.W. to the hospital where Linda Detillion, RN, performed a rape kit on A.W. The matter was also reported to the police. A.W.'s shorts were collected by Detective Reinbolt and were subsequently submitted to laboratories for body fluid and DNA testing. (Tr., p. 303-304.)

{¶10} Detective Reinbolt testified about his investigation of the case, his handling of the evidence, the results obtained from the DNA testing, and the information he obtained from questioning Timm, A.W., and others involved in the case. Detective Reinbolt acknowledged that the report A.W. initially gave at the police department did not disclose the sexual activity that occurred in the garage. (Tr., p. 136.) However, when A.W. gave her initial statement to Sergeant Hoerig, her father was present. (Tr., p. 158.) A.W. indicated she was embarrassed to tell the Sergeant everything while her father was there. Detective Reinbolt testified that when he spoke with A.W. her father was not present and that she told him all of the details of what had occurred that evening. (Id.)

{¶11} Linda Detillion, a registered nurse working at Mercy Hospital, was a trained Sexual Assault Nurse Examiner ("SANE"), and testified about her examination of the victim and how she collected evidence for the rape kit. Ms. Detillion's report stated that she discovered evidence of sexual assault, including a tear, redness, and chaffing in the vaginal area. (Tr., p. 221; Ex. 1-A.) Ms. Detillion was not able to obtain all of the samples that are sometimes available because the incident had occurred more than a day earlier and A.W. had showered after she came home from the party.

{¶12} Natalie Saracco, a forensic scientist with the Ohio BCI, testified concerning the procedures she used to obtain and preserve the DNA samples from

the rape kit, from Timm's control sample (provided from a cheek swab), and from the shorts that A.W. was wearing that evening. Ms. Saracco testified that her testing procedures discovered semen and sperm on the inside of the crotch area of A.W.'s shorts, and she sent that material to Lab Corp for DNA testing.

{¶13} Shawn Weiss, an Associate Technical Director from Laboratory Corporation of America ("Lab Corp."), provided expert witness testimony concerning the DNA testing performed on the evidence received from the BCI. The results of the testing showed that the sperm extracted from the material from A.W.'s shorts was consistent with the DNA profile from Timm. (Tr. at p. 303) Mr. Weiss testified that the statistical probability that someone other than Timm could be the source of the DNA in the sperm fraction extracted from the shorts was less than one in more than 6.5 billion (the entire world's population). (Tr. at p. 304.) Mr. Weiss explained this further by testifying that this meant that unless Timm had an identical twin, the semen on the victim's shorts was Timm's semen. (Id.)

{¶14} On cross examination, Timm's attorney attempted to discredit the witnesses and show that A.W. was not to be believed because she had repeatedly changed her story and had initially lied about what had occurred at the party. Timm's attorney also tried to establish that Timm did not know A.W.'s age.

Detective Reinbolt acknowledged that A.W. looked several years older than she was. (Tr. at p. 144.)

{¶15} The jury returned a verdict of guilty and a sentencing hearing was held on May 31, 2011. The trial court sentenced Timm to fifteen months in prison; it ordered that he pay restitution and register as a sex offender; and it informed him that he would be subject to five years of postrelease control. It is from this judgment that Timm now appeals, raising the following four assignments of error for our review.

### First Assignment of Error

**There was insufficient evidence introduced at trial to support the finding that [Timm] was guilty of having unlawful sexual conduct with a minor in violation of Ohio Revised code Section 2907.04**

### Second Assignment of Error

**The decision of the jury to find [Timm] guilty of unlawful sexual conduct with a minor in violation of Ohio Revised Code Section 2907.04 is against the manifest weight of the evidence.**

### Third Assignment of Error

**[Timm] was denied effective assistance of counsel in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

**Fourth Assignment of Error**

**The court committed plain error by not allowing any evidence of the acquittal or mistrial to be heard by the jury.**

*First Assignment of Error*

{¶16} In the first assignment of error, Timm contends that the State failed to prove all of the essential elements of the offense. Timm argues that the State failed to prove that there was sexual conduct between himself and the alleged victim. In addition, Timm challenges the sufficiency of the evidence to support his conviction for unlawful sexual conduct with a minor because he asserts that the State failed to prove that he either knew A.W.'s age or acted reckless in that regard.

{¶17} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks,* supra; *Jackson v. Virginia* (1979),

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶18} Timm was found guilty of violating R..C. 2907.04, which states:

**(A)  No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.**

**(B)  Whoever violates this section is guilty of unlawful sexual conduct with a minor.**

{¶19} First, regarding the element of sexual conduct between A.W. and Timm, A.W. testified that "he unbuttoned and unzipped my pants, turned me around and pulled my pants down to my ankles, bent me over, stuck his penis inside my vagina and had sex with me."  (Tr., p. 168, 12-24.)  A.W. claims that she kept standing up and his penis would come out, but that "he bent me back down, put it back in, put his penis back inside my vagina * * *," and that he did so repeatedly.  (Tr., p. 169, 1-2.)  Finally, the last time she stood up, "he pulled out and he ejaculated."  (Tr., p. 169, 5-6.)

{¶20} Timm argues that there was insufficient evidence based on A.W. previously telling "numerous versions" of what happened between her and Timm. However, whether or not the jury believed A.W. goes to her credibility and the

weight of the evidence. The State certainly provided sufficient evidence that, if believed, could reasonably support a finding of sexual conduct, namely that Timm had inserted his penis into A.W.'s vagina. See *State v. Thompkins*, supra. Furthermore, there was physical evidence that verified that sexual conduct took place. The SANE nurse testified that when she performed the rape kit on the victim, A.W. indicated that penile-vaginal intercourse, with ejaculation, had occurred. (Tr., p. 220.) Also, Ms. Detillion was able to observe a one centimeter tear in the genital area, as well as redness and chaffing, and the victim indicated that she was sore and tender in her genital area. (Tr., p. 221.) And, the analysis of the semen and sperm found on A.W.'s shorts was a match with Timm's DNA. (Tr., p. 304.) There was ample evidence presented to the jury that Timm had inserted his penis into her vagina.

{¶21} Timm further argues that there was insufficient evidence regarding whether Timm knew A.W.'s age, or was at least reckless in that regard. Again, there was significant evidence supporting that element. First, A.W. testified that she had a conversation with Timm about their respective ages being fourteen and twenty-three. (Tr., p. 163-164.) Second, the friends A.W. was with during the party, including Timm's fifteen-year-old sister and another girl he knew, were the same age group as the victim. (Tr., p. 112.) And, when Timm was questioned by Detective Reinbolt, he made statements to support this knowledge, including

referring to the victim as a "little girl." (Tr., p. 126). There was sufficient evidence that Timm knew A.W.'s age, or at the very least, he was extremely reckless about her age, to establish that element of the offense.

{¶22} A challenge to the sufficiency of the evidence requires us to construe the evidence, and all reasonable inferences, in favor of the prosecution. Based upon this standard, we find that the evidence was sufficient to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." See *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Jenks*, at paragraph two of the syllabus. Timm's first assignment of error is overruled.

*Second Assignment of Error*

{¶23} In the second assignment of error, Timm reiterates the arguments that he made in the first assignment of error, and claims that the jury's resolution of the conflicting evidence was in error and against the manifest weight of the evidence. He again claims that A.W.'s testimony was not credible and not to be believed.

{¶24} In determining if a conviction is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza* (2000), 137 Ohio App.3d 336, 346-

347, 738 N.E.2d 822, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546-547. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. *Thompkins* at 387; 678 N.E.2d 541.

{¶25} Although the appellate court acts as a "thirteenth juror," it still must give due deference to the findings made by the fact-finder. *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456. The fact-finder, being the jury, occupies a superior position in determining credibility. Id. When examining witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. To reverse the judgment of a trial court on the weight of the evidence based upon a jury's verdict, a unanimous concurrence of all three judges on the reviewing panel is required. *Thompkins*, at paragraph four of the syllabus.

{¶26} Based on all of the evidence presented, the jury could have reasonably believed that Timm inserted his penis into the victim's vagina. Although A.W. did not immediately disclose that the sexual conduct occurred, either to her parents or in the initial police report, she never denied it. A.W.

offered a plausible explanation as to why she did not tell her parents what had happened at first. She testified that she was afraid that they would be angry with her and that she would lose their respect. Her testimony disclosed how her father started to berate her and call her a "slut" when she admitted to kissing Timm, so she was fearful of telling him more. The jury could have reasonably believed that this was a believable explanation as to why A.W.'s later versions relating the evening's events were not consistent with her initial disclosures. The detective also testified that it was very common for victims of sexual crimes to be hesitant to tell everything that happened at first.

{¶27} Timm also claims that his DNA could have been on A.W.'s shorts as a result of her sitting on his lap during the evening. However, the fact that the semen and sperm were found on the *inside* of the crotch of the shorts, coupled with A.W.'s testimony and that of the expert witnesses, certainly provides sufficient evidence for a jury to infer that Timm's semen was on the victim's shorts because she was wearing them pulled down during the sexual conduct with Timm, and when he ejaculated, some of his semen was deposited on the inside crotch area of the shorts.

{¶28} Based upon a thorough review of the record as a whole, we find nothing that shows that the jury clearly lost its way in resolving any conflicts in A.W.'s testimony or in the conclusions and inferences it made, based upon a

considerable amount of corroborating and physical evidence. The second assignment of error is overruled.

*Third Assignment of Error*

{¶29} Timm's third assignment of error asserts that counsel was ineffective in failing to object to "substantial amounts" of hearsay evidence that was admitted at the hearing. Timm cites numerous examples of alleged hearsay testimony from Detective Reinbolt, specifically when he testified as to what he had learned from his interviews with A.W., A.W.'s father, Timm, and others he obtained information from during his investigation.

{¶30} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶132; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus; *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "A 'reasonable probability' is a probability sufficient to undermine confidence in the result of the proceeding." *State v. Group*, at ¶132. There is strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and that strategy and tactical

decisions exercised by defense counsel are well within the range of professionally reasonable judgment and need not be analyzed by a reviewing court. *State v. Robinson* (1996), 108 Ohio App.3d 428, 670 N.E.2d 1077.

{¶31} In reviewing the record as a whole, it is clear that trial counsel's strategy was to portray the victim as a liar who was out for revenge against Timm for rejecting her romantic interest. Counsel wanted the jury to believe that A.W. gave multiple, different stories about what had occurred to various people, including law enforcement, her father, and hospital staff. In order to accomplish this strategy trial counsel allowed, and actually elicited, accounts of what happened, according to the victim, through multiple witnesses. Trial counsel's decision to allow these statements was nothing more than a part of that strategy and certainly does not rise to the level of ineffective assistance of counsel. A tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clayton* (1980), 62 Ohio St.2d 45, 48-49, 402 N.E.2d 1189.

{¶32} Additionally, these statements were not offered for the truth of the matter, but were offered to explain the progression of the investigation and why the detective spoke with certain individuals and how he obtained information and evidence. Further, the victim actually testified regarding what happened and about

the previous statements she gave to law enforcement, the nurse, and her father. Therefore, any substantive information presented to the jury through these statements was presented through the victim as well, providing for an opportunity for cross-examination. As a result, even if counsel had failed to exclude any hearsay statements, Timm cannot show any resulting prejudice. Therefore, the Appellant's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶33} In his final assignment of error, Timm claims that the court committed plain error by prohibiting any mention of his acquittal on the first two counts of the indictment and by not allowing evidence or mention of the mistrial on the remaining count that was before the jury in the instant case. Timm argues that this was plain error in light of the fact that A.W. and other witnesses were permitted to testify as to matters that he was acquitted of because the trial court stated that A.W. would be permitted to testify again as to her version of the underlying fact pattern and allegations of sexual conduct. (Tr. pp. 12-13.) Tim complains that the State was "permitted to prosecute Appellant again on charges that he was previously acquitted on" because A.W.'s testimony as to what happened that evening included mention of the fact that Timm had fondled her under the blanket and had asked her to perform oral sex. (Appellant's Br., pp. 19-20.)

{¶34} Timm's counsel did not object to the limitations ordered by the trial court, so they are deemed waived on appeal, absent a showing of plain error. "Crim.R. 52(B) states that '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' Thus, there are 'three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.'" *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-22, 950 N.E.2d 931, ¶13, quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.

{¶35} Even when all three prongs are satisfied, a court still has discretion whether or not to correct the error. Id. at ¶14; *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶62. The Ohio Supreme Court "acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 759 N.E.2d 1240,

quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶36} The first step in finding plain error requires the existence of an error – i.e., a deviation from a legal rule. See *State v. Lynn*, supra. However, Timm has failed to cite any case law, rule, or statute in support of his claim that the suppression of any reference to the prior acquittals/mistrial was an error. Timm has failed to show how this type of evidence would ever be relevant and admissible. See Evid. R. 402. " 'Relevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The outcome of the previous trial simply indicates that a prior jury determined that the evidence did not prove the charge beyond a reasonable doubt, not that the events did not actually occur.

{¶37} Timm was not tried again on the counts pertaining to digital penetration and fellatio. The jury instructions were clearly focused on sexual conduct meaning the insertion of a penis into a vagina. (Tr., p. 323.) The other sexual acts and the previous jury's findings concerning them, were irrelevant as to Timm's guilt or innocence regarding this particular act. In fact, testimony concerning the other sexual behavior that A.W. engaged in that evening furthered

Timm's counsel's trial strategy of showing that she had told different stories of different sexual acts to different people.

**{¶38}** Furthermore, even if the results of the earlier trial somehow would have been relevant to the case at hand, the second and third prongs of Civ.R. 52(B) were not met because the exclusion of this information did not amount to an obvious defect in the trial proceedings, nor did it affect Timm's substantial rights. Timm's fourth assignment of error is overruled.

**{¶39}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**