[Cite as *State v. McKenzie*, 2019-Ohio-3033.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 9-19-02

    v.

PAUL MCKENZIE, JR.,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 18-CR-222

**Judgment Affirmed**

**Date of Decision:  July 29, 2019**

APPEARANCES:

    *Robert C. Nemo* for Appellant

    *Nathan R. Heiser* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Paul McKenzie, Jr. ("McKenzie"), brings this appeal from the December 27, 2018, judgment of the Marion County Common Pleas Court sentencing him to eleven months in prison after a jury convicted him of Breaking and Entering in violation of R.C. 2911.13(A), a felony of the fifth degree. On appeal, McKenzie argues that there was insufficient evidence presented to convict him, that his conviction was against the manifest weight of the evidence, and that he received ineffective assistance of counsel.

*Background*

{¶2} On May 2, 2018, McKenzie was indicted for Breaking and Entering in violation of R.C. 2911.13(A), a felony of the fifth degree, and Theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. It was alleged that on May 17, 2017, McKenzie broke a rear window of a hair salon in Marion, Ohio, and stole $156.91 in currency. McKenzie pled not guilty to the charges.

{¶3} On October 30, 2018, McKenzie proceeded to a jury trial wherein he was convicted of Breaking and Entering, but acquitted of the Theft offense. On December 21, 2018, McKenzie was sentenced to serve eleven months in prison, consecutive to another prison term McKenzie was already serving. A judgment entry memorializing McKenzie's sentence was filed December 27, 2018. It is from

this judgment that he appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The jury's verdict convicting appellant of Breaking and Entering was based on insufficient evidence.**

**Assignment of Error No. 2**
**Appellant's conviction for Breaking and Entering was against the manifest weight of the evidence.**

**Assignment of Error No. 3**
**Appellant was denied his constitutional right to effective assistance of counsel.**

{¶4} As both the first and second assignments of error deal with a discussion of the evidence, we will address them together.

*First and Second Assignments of Error*

{¶5} In McKenzie's first assignment of error, he argues that there was insufficient evidence presented to convict him of Breaking and Entering. In his second assignment of error, he argues that even if there was sufficient evidence presented to convict him, his conviction was against the manifest weight of the evidence.

Standard of Review

{¶6} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency

challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶7}** By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

**{¶8}** Nevertheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

## Controlling Statute

**{¶9}** McKenzie was convicted of Breaking and Entering in violation of R.C. 2911.13(A), which reads, "(A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."

## Evidence Presented

**{¶10}** At trial, Betty Oney-Terrazas testified that she was the owner of a hair salon at 533 East Center Street in Marion. Betty was a licensed cosmetologist and rented booths at her business to other cosmetologists. There were six stylists that worked at the salon other than Betty, all of whom had been with her for a significant amount of time, the most recent joining her business in 2008.[1]

**{¶11}** Betty testified that on Tuesday May 16, 2017, she was the last person to leave the salon. She testified when she left that the cash register was closed and locked, that there had been just over $156 in it, that all of the appliances were turned off, and that the doors were locked.

**{¶12}** Officer Michael Diem of the Marion Police Department was on routine patrol in the early morning hours of May 17, 2017, when he noticed that the back window of the hair salon had been broken. Officer Diem testified that he called other units to assist him at the scene in case someone had broken in, and was still

---

[1] The other stylists all had keys to the building.

inside the business. Officer Diem testified that he checked the doors, finding that they were locked. He then called Betty, the owner of the business, to unlock the doors so officers could go inside.

{¶13} Betty testified that she received the call from the police between 4 and 5 a.m. on May 17, 2017, indicating that there had been a break-in at her establishment through the rear window. She took her keys to the scene, and police searched the building but did not find anyone inside.

{¶14} Once Betty went inside after the officers cleared the building, she testified that the cash register drawer had scratches on it as though it had been pried open, and that "just over $156" had been taken from it. She also testified that a cabinet was open and that gift certificates had been taken.

{¶15} The site of the break-in at the rear window was then examined. Betty testified that the back window had been "busted out." She testified that the back window contained two panes of glass with a thin metal lattice between them, which was arranged in diagonal crosses. She indicated that there was also a special UV coating on the windows, and that the metal lattice was sandwiched between the two panes, making it difficult to separate the window pane from the lattice. Because of the metal lattice sandwiched between the panes, the glass to the back window was not completely shattered; rather, a portion of the glass window had been "busted out" and the metal lattice had been bent, primarily outward, to allow potential entry

to, or egress from, the building. Betty indicated that the window was in an area that was once a garage, so it was lower to the ground.

{¶16} The back of the business, where the break-in occurred, was surrounded by what Betty described as "hip length" bushes. Betty testified that the bushes operated like a fence to keep things from blowing against the building.

{¶17} Officer Diem testified that while searching the area near the broken window he located a small paper "Dixie" cup. There was also a small piece of what appeared to be orange latex, perhaps from a glove, stuck to the window, and another small piece on the ground outside the window. Officer Diem noted that the metal lattice was bent and that the majority of the glass was on the exterior of the building, though there were some shards on the interior. Officer Diem took numerous photographs at the scene, including where the paper cup was found, which were introduced into evidence at trial.

{¶18} Betty testified that she recognized the Dixie cup as being of the same design as those she had inside her store on top of the water cooler. There was a particular design on them that matched. Officer Diem collected the cup, compared it to those inside, and concurred that it was the same type.[2] Further, Betty testified that to get to the cash register from the broken window, someone would walk directly past the water cooler where the cups were. Betty also testified that there

---

[2] The cup itself was not introduced as an exhibit at trial.

were drops of water in a tray under the water cooler, indicating the water cooler had been used recently, because the water would likely have evaporated if it was there from the last customer of the evening.

{¶19} The orange latex pieces from the scene and the cup were collected and sent for DNA testing. The parties stipulated at trial that a DNA sample had been taken from McKenzie for comparison purposes. DNA consistent with McKenzie's was found on the rim of the cup. A forensic scientist testified that she would have to test roughly 1 trillion people before she came across another person that matched the DNA on the cup as well as McKenzie. However, no conclusive DNA sample could be taken from either piece of the orange latex, as there was a mixture from multiple people on each piece.[3]

{¶20} Notably, Betty testified that no one in her office used orange gloves, as only clear gloves or black gloves were used. She testified that their supply house did not sell orange latex gloves.

{¶21} Finally, Betty testified that she did not know McKenzie, that he was not a client of hers, that she had never seen him, and that she did not know any reason why he would be around her salon. She testified that while her cosmetologists kept their own books, she was not aware of McKenzie being in her salon before.

---

[3] According to the DNA expert, one piece of the latex had a DNA "mixture" from at least three people, and another piece had a DNA mixture from at least two people.

Analysis

{¶22} In his first and second assignments of error, McKenzie argues that there was insufficient evidence presented to convict him of Breaking and Entering, and that his conviction was against the manifest weight of the evidence. Specifically, he argues that the only evidence linking him to the scene was the cup found outside the broken window, that the State's evidence connecting the cup to the one inside the salon was "questionable," and that the jury clearly lost its way because it acquitted McKenzie of the Theft offense, effectively "compromising" the verdict.

{¶23} Contrary to McKenzie's claims, there was sufficient evidence linking him to the scene of the Breaking and Entering through his DNA on the paper "Dixie" cup found just outside the broken window in the bushes. Both Betty and Officer Diem testified that the cup matched those that were inside the salon on top of the water cooler, including having the same specific design. Moreover, Betty testified that she could tell that the water cooler had been used recently because water had dripped down into the tray below it. Furthermore, the window was also clearly broken and ripped open by force, with the lattice being bent multiple directions. Betty also testified that she did not know McKenzie, and that he had no reason being in her building, where he could have acquired the cup.

{¶24} The jury could infer from the evidence presented that McKenzie unlawfully entered the salon by force and intended to commit a Theft offense by breaking into the salon, regardless of his ultimate success in the endeavor. Therefore, based on the testimony and exhibits, we cannot find that there was insufficient evidence presented to convict McKenzie of Breaking and Entering, and his first assignment of error is overruled. In fact, his arguments are more properly characterized as challenges to the weight of the evidence, as he is really contesting the quality of the State's evidence and the credibility of the witnesses. *See State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 24.

{¶25} As to McKenzie's challenges to the weight of the evidence, he contends that the police should have done more in its investigation in this matter, and that the prosecution should have presented more evidence from the scene for the jury to observe. He argues that the police should have collected the cups on top of the water cooler so the jury could compare them to the cup at the scene, that the State should have presented the cup at the scene rather than a distant picture of where it was found outside the broken window, and he also argues that the State should have had DNA testing performed on the cup from where it was held, not just from the rim.

{¶26} Notably, all of these issues were raised and argued by trial counsel in cross-examination and in closing argument. Still, the jury found beyond a

reasonable doubt that McKenzie committed Breaking and Entering as charged. We must defer to credibility determinations of the jury, which evidently believed the testimony of Betty and Officer Diem that the cup found outside matched those inside. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Officer Diem testified that the cup looked new outside and Betty testified that the bushes typically blocked debris from being blown against the business.

{¶27} Finally, McKenzie argues that there was a "compromised verdict" in this matter because the jury acquitted him of Theft. First we note that this "compromised verdict" argument is improperly summarized in McKenzie's brief under the guise of arguing against the weight of the evidence. If McKenzie wished to properly raise this "compromised verdict" argument, he should have presented it as its own assignment of error, rather than placing it under assignment of error dealing with "manifest weight of the evidence." For this reason alone we could disregard this argument. *See* App.R. 12; App.R.16; *State v. Chilcutt*, 3d Dist. Crawford Nos. 3-03-16, 3-03-17, 2003-Ohio-6705.

{¶28} Nevertheless, we do not find a compromised verdict in this matter. The jury could have found that the State did not adequately establish the amount of any Theft offense, or adequately establish that specific property had been taken, while still believing that the State established that McKenzie broke into the salon with the intent to commit a Theft offense, satisfying the Breaking and Entering

charge.[4]  *See State v. Carroll*, 12th Clermont Dist. 14 Ohio App.3d 51 (1984) (breaking and entering complete when defendant entered with the intent to commit the offense).  Based on the evidence presented, we cannot find that the jury clearly lost its way or that the conviction is against the manifest weight of the evidence. McKenzie's second assignment of error is overruled.

### *Third Assignment of Error*

**{¶29}** In McKenzie's third assignment of error, he argues that he received ineffective assistance of trial counsel.  Specifically, he contends that his counsel failed to object to certain testimony that he claims would have been inadmissible.

### Standard of Review

**{¶30}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no

---

[4] Or perhaps the jury found Betty's testimony inconclusive regarding the money.  Officer Diem testified that he did not recall Betty telling him that there were scratches on the cash register, that he would have taken a picture of it if she had, and that he likely would have written it in his report.

reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**{¶31}** We note that a tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clatyon*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Timm*, 3d Dist. Seneca No. 13-11-23, 2012-Ohio-410, ¶ 31. "Furthermore, trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Turks,* 3d. Dist. Allen No. 1–08–44, 2009–Ohio–1837, ¶ 43, citing *State v. McKinney,* 11th Dist. Trumbull No.2007–T–0004, 2008–Ohio–3256, ¶ 191; *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 103.

Analysis

**{¶32}** In his third assignment of error, McKenzie takes issue with numerous portions of testimony that he feels his trial counsel should have objected to, and that he feels were prejudicial. First he argues that trial counsel should have objected when Betty testified that police called her and told her there had been a break-in at her salon and requested her keys to see if anyone was still on the premises. Contrary to his argument, we find nothing objectionable about this testimony, as it was not offered to prove the truth of the matter, but rather to establish why Betty arrived at

the location, how she was informed of the incident, and how officers gained entry to the salon. Regardless, the same direct testimony was given by Officer Diem, thus even if there was any error in presenting the testimony through Betty, it would be entirely harmless.

{¶33} McKenzie next argues that trial counsel failed to object to testimony from Betty that when someone took water from the water cooler the cooler usually dripped one or two times, and that the water likely would have evaporated if the water cooler had been used by the last customer of the prior night. McKenzie contends that Betty's point needed to be proven through expert witness testimony. However, Betty was merely testifying to her experiences with this particular water cooler, thus we find no error here.

{¶34} Finally, McKenzie argues that trial counsel failed to object to Officer Diem's testimony that the cup he found outside the building appeared to be new and did not look like it had been outside for any extended period of time. McKenzie cites no authority as to how this testimony is outside the knowledge of an ordinary person, or as to why Diem could not render an opinion regarding it. Thus he has failed to establish how this testimony would have been excluded. Therefore, McKenzie's third assignment of error is overruled.

*Conclusion*

**{¶35}** For the foregoing reasons McKenzie's assignments of error are overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**