[Cite as *State v. Holton*, 2017-Ohio-6934.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,              CASE NO.  8-17-02

     v.

BYRON JAY HOLTON, JR.,           O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR16-09-0250

**Judgment Affirmed**

**Date of Decision:   July 24, 2017**

APPEARANCES:

    *Marc S. Triplett* for Appellant

    *Sarah J. Warren* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Byron Holton ("Holton), brings this appeal from the December 19, 2016, judgment of the Logan County Common Pleas Court sentencing Holton to serve an aggregate 7-year prison term after Holton was convicted in a jury trial of Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4), a felony of the second degree, and Complicity to Trafficking in Cocaine in violation of R.C. 2923.03 and R.C. 2925.03(A)(1), a felony of the fifth degree. On appeal, Holton argues that the trial court erred by allowing an audio tape of a debriefing session with a confidential informant to be played and entered into evidence at trial, that the trial court erred by asking Holton's age, that Holton's convictions were against the manifest weight of the evidence, that the trial court failed to provide mandatory jury instructions, that Holton received ineffective assistance of counsel, and that the errors constituted cumulative error if they were not individually prejudicial.

*Facts and Procedural History*

{¶2} On September 14, 2016, Holton was indicted on one count of Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4), a felony of the second degree, and one count of Trafficking in Cocaine in violation of R.C. 2925.03(A)(1), a felony of the fifth degree. Holton pled not guilty to the charges and the case proceeded to a jury trial, which was held December 6-7, 2016.

{¶3} The testimony at trial indicated that on July 26, 2016, officers affiliated with the Logan County Joint Drug Task Force were using a confidential informant ("CI") named Bradley Hudson to attempt to make a controlled drug buy from a man named Meredith Story.

{¶4} After officers outfitted the CI with audio recording and transmitting equipment, and provided the CI with $40 to purchase drugs, the CI went to the residence of Kenneth Williams, aka "Ken Buck," where Story was staying. The CI indicated in his testimony that Story was a middleman for Holton, who sold quality drugs.

{¶5} When the CI went to Ken Buck's residence to find Story, Story was not home. Ken Buck indicated that he may be able to set up a deal with a separate dealer so the CI went with Ken Buck to a nearby area. The other drug dealer never came and the alternative transaction was not completed.

{¶6} By the time Ken Buck had failed to set up an alternate transaction, Story had returned to town. The CI spoke with Story, who then called Holton. Holton was known on the street as "BJ." Story set up an $80 purchase that the CI understood to be from Holton, which would involve $40 from the CI and $40 from Story. The purchase was supposed to occur at a Marathon station so Story, Ken Buck, and the CI drove to the Marathon.

{¶7} The CI indicated that they waited in a car at the Marathon station until Holton approached the Marathon station on foot along with two "kids." The CI testified that Holton and the "kids" went into the Marathon station and then one of the "kids" walked out and came up to the window at the back of the car to speak with Story. The CI testified that the kid said something like "80, right?" (Tr. at 193). The CI indicated that they felt "kind of uneasy about buying crack from kids," but the sale was ultimately completed. (*Id.*) The CI indicated that money was then exchanged for the drugs and the juvenile walked off. The CI, Ken Buck, and Story then left the Marathon station.

{¶8} The CI testified that they went back to Ken Buck and Story's residence where the drugs were divided and the CI left. Afterward, officers recovered a substance suspected to be crack-cocaine from the CI, which was later tested and found to contain cocaine.

{¶9} Officers recorded the audio from the operation and also conducted visual surveillance at the Marathon, taking pictures of Holton and the two juveniles, later identified as Tyrese Leeper and Roland Ratliff, as they came to, and left from, the scene with Holton. Officers interviewed Leeper, who admitted to selling drugs on that one occasion on behalf of Holton. Leeper indicated that he agreed to sell for Holton in exchange for money to buy food.

{¶10} Leeper and Ratliff both testified at trial along with the CI and officers involved in the investigation. Leeper testified that he was 13 years old at the time of the July 26, 2016 transaction and that he was 14 at the time of trial. Leeper also testified that Holton was in his mid-20s.

{¶11} As to the incident in question, Leeper testified that on the day of the sale Holton received a phone call while they were playing basketball asking if Holton had some "dope" to sell. Leeper indicated that "dope" in this instance was crack-cocaine. (Tr. at 120-121). Leeper testified that Holton asked Leeper to sell it for him and that Holton indicated he would give Leeper some money for doing so. Leeper testified that he had not eaten in multiple days and needed money for food. Leeper testified that he walked to the Marathon station with Holton and Ratliff, and that Holton handed Leeper the crack-cocaine on the way to the store. Leeper testified that they all went into the store, then Leeper came out and approached the vehicle, exchanging the drugs for the money.

{¶12} Roland Ratliff testified that he was 15 years old and that he was Leeper's cousin. Ratliff testified that both he and Leeper had "run drugs" for Holton in the past. Ratliff testified that he had never sold drugs for anyone besides Holton. Ratliff largely corroborated the events as testified to by the CI and Leeper, with the notable exception that Ratliff indicated drug sales for Ratliff and Leeper on behalf of Holton had been ongoing rather than a one-time event.

{¶13} The State entered numerous exhibits into evidence, which included photographs of Holton, Ratliff and Leeper coming to, and going from, the Marathon station. The State introduced brief recorded surveillance videos as well as the audio recording of a debrief session with the CI. In addition, the State introduced the audio from two calls that Holton made from jail.

{¶14} At the conclusion of the evidence, the State requested that the jury be instructed on Complicity to Trafficking in Cocaine and that request was granted. The jury found Holton guilty of Corrupting Another with Drugs and guilty of Complicity to Trafficking in Cocaine, but not guilty of Trafficking in Cocaine.

{¶15} Holton was then sentenced to serve five years in prison on the Corrupting Another with Drugs charge, 1 year in prison on the Complicity to Trafficking in Cocaine charge, and 1 year in prison for committing a new felony while on post-release control. The sentences were ordered to be served consecutive to each other for an aggregate 7-year prison term. A judgment entry memorializing Holton's sentence was filed on December 19, 2016. It is from this judgment that Holton appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The Trial Court committed plain error when it permitted State's Exhibit 26, the audio tape of the debriefing session, to be played for the jury and subsequently admitted into evidence.**

**Assignment of Error No. 2**
**The Trial Court committed plain error when it questioned Detective Joseph as to Appellant's age.**

**Assignment of Error No. 3**
**The State failed to prove Appellant's guilt beyond a reasonable doubt as to both counts in the indictment.**

**Assignment of Error No. 4**
**The trial court committed plain error when it failed to instruct the jury concerning the manner in which it should weigh the testimony of an accomplice of an expert.**

**Assignment of Error No. 5**
**The omissions of trial counsel deprived appellant of his right to effective assistance of counsel.**

**Assignment of Error No. 6**
**The combined effect of all errors identified herein deprived appellant of due process and a fair trial.**

*First Assignment of Error*

{¶16} In Holton's first assignment of error, he argues that the trial court erred by permitting the State to play an audio recording of a debriefing session between the CI and Detectives Comstock and Joseph of the Joint Drug Task Force. Holton argues that it was plain error for the trial court to permit this "hearsay" evidence.

{¶17} We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *State v. Lauf*, 3d Dist. Putnam No. 12–16–06, 2017–Ohio–608, ¶ 54, citing *State v. Cassel*, 2d Dist. Montgomery No. 26708, 2016–Ohio–3479, ¶ 13, citing *State v. Graham,* 58 Ohio St.2d 350 (1979), and *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, ¶ 19. An abuse of discretion

constitutes a decision that is arbitrary, capricious, or grossly unsound. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶18}** However, where Holton did not object to an evidentiary issue, we review his arguments on appeal for plain error. *State v. Mammone*, 139 Ohio St.3d 467, 2014–Ohio–1942, ¶ 69, *reconsideration denied*, 139 Ohio St.3d 1487, 2014–Ohio–3195, and *cert. denied*, 135 S.Ct. 959 (2015). We take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To prevail under plain error, Holton must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *Mammone* at ¶ 69, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

**{¶19}** On appeal in this case, Holton argues that it was plain error for the trial court to permit the State to introduce into evidence a recording of law enforcement officers "debriefing" the CI after the controlled buy. Holton contends that playing the audio recording allowed the State to have a "second delayed opening statement or an initial closing statement." (Appt.'s Br. at 10). Holton also argues that the State then referenced the debriefing session in its closing argument to "improperly vouch" for the CI's credibility.

-8-

{¶20} Even if we assumed, without finding, that the audiotape of the debrief constituted hearsay in this instance, we cannot find that it rose to the level of plain error. The debriefing tape, State's Ex. 26, is 3 minutes and 2 seconds in length and primarily consists of Detective Joseph and Detective Comstock narrating what happened prior to and during the controlled buy. The CI also spoke briefly on the recording, indicating his role. Both detectives that were on the tape and the CI all testified at trial. There was nothing material on the audio recording that was not presented through the testimony of the witnesses in this case. The audio recording was entirely cumulative in all material parts.

{¶21} Based on the actual contents of the audio recording of the "debrief," even if we did find that it was erroneously admitted into evidence, Holton cannot remotely establish that any such error altered the outcome of the trial as it merely contains evidence cumulative to what was already presented elsewhere through multiple witnesses. Therefore, Holton's first assignment of error is overruled.

*Second Assignment of Error*

{¶22} In his second assignment of error, Holton argues that the trial court committed plain error by asking Detective Joseph how old Holton was. Specifically, Holton argues that absent the trial court's questioning the record did not establish Holton's age in order to prove the Corrupting Another with Drugs

charge, which requires a 2-year age difference between the defendant and the juvenile who is being corrupted.

**{¶23}** Initially, we note that Evid.R. 611 grants the trial court the power to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

**{¶24}** "Evid.R. 614(B) empowers the court with the authority to interrogate any witness in an impartial manner. A court's questioning of a witness falls within the court's sole discretion." *State v. Gervin*, 3d Dist. Marion No. 9-15-52, 2016-Ohio-8399, ¶ 184, citing *State v. Prokos,* 91 Ohio App.3d 39, 44, 631 N.E.2d 684 (4th Dist.1993).

**{¶25}** In this case, at the end of the testimony of Detective Joseph of the Logan County Sheriff's Office, the trial court asked Detective Joseph what Holton's date of birth was. The trial court indicated that it was unsure whether that information was in the record. At that time, defense counsel actually agreed to stipulate to Holton's age, which was 26 years old.

**{¶26}** Holton now argues that the trial court's question constituted plain error as the trial court was essentially acting as a prosecutor, asking a question specifically regarding an element of Corrupting Another with Drugs. Corrupting Another with

Drugs as charged in this case required proof that Holton furnished a controlled substance to a juvenile who was at least two years younger than Holton. Holton claims that absent the trial court's question, and defense counsel's stipulation, the jury may have found that the evidence did not support the two-year age difference between Holton and Leeper. As Holton did not object to the trial court's question, and, in fact, stipulated to the answer, we review Holton's argument on appeal for plain error.

**{¶27}** At the outset of our analysis we note that a trial court is permitted to ask questions of witnesses and exercise control of the presentation of evidence. *See Gervin*, *supra*, at ¶¶ 181-195. However, even if we assumed that the trial court overreached by specifically clarifying Holton's age, we could not find plain error in this instance as Holton's age was referred to multiple times in the record, and Leeper's age as 13 at the time of the crime and 14 at the time of trial was clearly established.

**{¶28}** As to Holton's age specifically, Tyrese Leeper testified that years prior to the incident in this case he had asked Holton how old he was and Holton had said 23 at that time, so Leeper thought Holton was in his "mid 20s" at the time of trial when he was asked by the prosecutor. Leeper was familiar with Holton since he was his friend and Leeper's mother also braided Holton's hair.

{¶29} In addition to Leeper's testimony regarding Holton's age, Roland Ratliff testified that Holton was "grown" and that Holton was not in school anymore, establishing that Holton was likely over 18. (Tr. at 157). Furthermore, and perhaps most importantly, property receipts entered into evidence affirmatively listed Holton's date of birth as being in 1990, which clearly established his age for the purposes of Corrupting Another with Drugs.

{¶30} Based on the evidence in the record, we could not find that plain error existed here even if we did find the trial court erred. The trial court's questioning merely clarified what was already in the record in multiple other places. Moreover, defense counsel's strategy was not to challenge the age of Holton or Leeper, particularly given that even at 18 Holton would have been more than 2 years older than Leeper; rather, Holton's strategy appeared to be to paint Leeper as the sole culprit of the drug transaction. For all of these reasons we cannot find that plain error exists in this case. Therefore, Holton's second assignment of error is overruled.

*Third Assignment of Error*

{¶31} In Holton's third assignment of error, he argues that his convictions were against the manifest weight of the evidence. Specifically, he argues that Leeper was the State's key witness and his testimony was simply not credible.

**{¶32}** In reviewing whether a defendant's conviction was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph 4 of the syllabus; Ohio Constitution, Article IV, Section 3(B)(3).

**{¶33}** In this case, Holton was convicted of Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4), which reads,

**(A) No person shall knowingly * * *:**

**\* \* \***

**(4) By any means, do any of the following:**

**(a) Furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard[.]**

{¶34} Holton was also convicted of Complicity to Trafficking in Cocaine in violation of R.C. 2923.03 and 2925.03, which read, respectively,

[R.C. 2923.03]

**(A)  No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:**

**(1)   Solicit or procure another to commit the offense;**

**(2)   Aid or abet another in committing the offense;**

[R.C. 2925.03]

**(B)  No person shall knowingly do any of the following:**

**(1)   Sell or offer to sell a controlled substance or a controlled substance analog;**

**\* \* \***

**(4)   If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. \* \* \***

**(b)   Except as otherwise provided \* \* \* trafficking in cocaine is a felony of the fifth degree \* \* \*[.]**

{¶35} At trial in this case the State presented the testimony of both Leeper and Ratliff indicating that Leeper sold crack-cocaine for Holton on this particular July 26, 2016 occasion, establishing the Complicity to Trafficking in Cocaine offense.  The ages of Leeper, Ratliff and Holton were clearly in the record, establishing the age difference required for Corrupting Another with Drugs.  Leeper

-14-

also indicated that Holton gave him the drugs on the way to the Marathon station. Further, the CI indicated that it was his understanding that the purchase had been set up through Holton.

{¶36} While Holton may argue that Leeper's testimony was not credible, Leeper's testimony regarding this particular incident was corroborated by Ratliff. It was also corroborated in various parts by the CI and the surveillance footage showing Leeper and Ratliff walking to the Marathon station with Holton. The jury was presented with testimony undermining Leeper's credibility, such as Ratliff's testimony that Ratliff and Leeper had sold drugs for Holton on other occasions, which contradicted Leeper's testimony that this had only happened one time. Nevertheless, the jury elected to believe the testimony in the record, and based on the evidence presented we cannot find that the jury clearly lost its way or that a manifest miscarriage of justice occurred. Therefore, Holton's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶37} In Holton's fourth assignment of error, he argues that the trial court erred by failing to include a mandatory jury instruction related to Complicity as required by R.C. 2923.03(D). Specifically, Holton argues that R.C. 2923.03(D) requires the trial court to give a jury instruction regarding evaluating the credibility of an accomplice if an accomplice testifies against the defendant and that such an

instruction was not given in this case, constituting reversible error. In addition, Holton argues that the trial court erred by failing to give an instruction to the jury regarding evaluating expert witness credibility with regard to the State's expert who tested the substance found to contain cocaine.

Accomplice Testimony and R.C. 2923.03(D)

**{¶38}** Holton first argues that R.C. 2923.03(D) required the trial court to include a jury instruction if an accomplice testified at trial against Holton. Revised Code 2923.03(D) reads as follows.

> **(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:**
>
> **"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.**
>
> **It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth**

**{¶39}** In this case it is undisputed that an instruction pursuant to R.C. 2923.03(D) was not given. It is similarly undisputed that Holton did not object to the trial court's failure to provide an instruction pursuant to R.C. 2923.03(D), thus he has waived all but plain error on appeal.

**{¶40}** Courts have held that "despite the mandatory nature of R.C. 2923.03(D), the statute only requires substantial, not strict, compliance." *State v. Woodson*, 10th Dist. Franklin No. 03AP-736, 2004-Ohio-5713, ¶ 17, citing *State v. Christian*, Jefferson App. No. 96-JE-42 (Jan. 13, 2000) ("R.C. 2923.03[D] expressly permits substantial compliance with the accomplice testimony instruction. Therefore, a trial court does not commit error if it does not literally comply with the statute."); *State v. Manley*, 7th Dist. Columbiana No. 95-CO-53, 1997 WL 28543 ("We read [R.C. 2923.03(D)] as not requiring the instruction to be read verbatim * * *").

**{¶41}** In applying this law, Ohio Appellate Courts have generally looked to three factors to determine whether failure to give an accomplice instruction constitutes plain error: "(1) the accomplice's testimony was corroborated by other evidence introduced at trial, (2) the jury was aware from the accomplice's testimony that he benefitted from agreeing to testify against the defendant; and/or (3) the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses." *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2017-Ohio-649, ¶ 5, *appeal not allowed*, 149 Ohio St.3d 1422, 2017-Ohio-4038, ¶ 5 (2017), citing *Woodson* at ¶ 18. Despite there being three factors to consider in evaluating whether failure to give an instruction pursuant to R.C. 2923.03(D) constitutes plain error, "courts have concluded that if the first factor and one other factor are present, the

absence of the accomplice instruction will not affect the outcome of the case."
*Woodson* at ¶ 18.

**{¶42}** In this case, the jury was instructed generally regarding its duty to evaluate the credibility of witnesses, satisfying the third factor. As to the first factor, Leeper's testimony was also corroborated by Ratliff; however, if Ratliff is also considered an accomplice despite having seemingly nothing personally to do with the drug sale *in this instance*, Leeper's testimony was still corroborated in part by the testimony of the CI and the surveillance of the officers.

**{¶43}** As to the second factor, Leeper was asked while he was on the stand if he was benefitting from his testimony, and he testified that there were no promises made to him for testifying, and he was not sure if a charge against him in juvenile court was still pending or not. Nevertheless, Leeper testified that when he was interviewed by Detective Joseph about this incident, he was scared that he was going to be in serious trouble. Testimony indicated that Leeper was the one who initially mentioned Holton's name in the interview with Detective Joseph. Leeper also testified that having a drug offense would hurt his ability to be an athlete in school. The jury was thus aware of Leeper's potential motives for fabrication.

**{¶44}** Based on the evidence presented and the general credibility instruction that was given to the jury in this case, we cannot find plain error in this instance for

the trial court's failure to give an instruction pursuant to R.C. 2923.03(D). Thus Holton's argument on this issue is not well-taken.

Expert Witness Instruction

**{¶45}** Holton next argues that the trial court erred in failing to give an instruction regarding the credibility of expert witnesses pursuant to Ohio Jury Instructions 409.21, which reads, "3. WEIGHT OF EXPERT TESTIMONY. As with other witnesses, upon you alone rests the duty of deciding what weight should be given to the testimony of the expert. In determining its weight, you may take into consideration his skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing credibility and determining the weight to be given to testimony."

**{¶46}** Holton argues that the preceding instruction should have been given since the State presented expert testimony of a forensic scientist who tested the drugs submitted and found that they contained cocaine. However, again, Holton did not object to any failure to give such an instruction on expert credibility, thus he has waived all but plain error. Regardless, there is no indication that in this instance a general credibility instruction would be insufficient, and in fact, the more specific instruction that Holton argues the trial court failed to give would arguably place more weight on the expert's testimony. Nevertheless, the expert essentially only testified to identifying that the substance tested contained crack cocaine, and this

fact was basically undisputed. Holton's trial strategy was to point to Leeper as the sole culprit, rather than denying a drug sale occurred at all. We can find no error here, let alone plain error. Holton's argument is thus not well-taken, and his fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶47}** In Holton's fifth assignment of error, he argues that he received ineffective assistance of trial counsel. Specifically, he contends that his counsel was ineffective for failing to object to the admission of the "debrief" audio recording as discussed in the first assignment of error, that his counsel was ineffective for stipulating to Holton's age as discussed in the second assignment of error, and that his counsel was ineffective for failing to object to his trial court's failure to include instructions as discussed in the fourth assignment of error.

**{¶48}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4-16-27, 28, 2017-Ohio-2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no

reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶49} With regard to Holton's claim on appeal that his counsel was ineffective for anything related to the first, second, and fourth assignments of error, we have already determined that no prejudice resulted as a result of these purported deficiencies, thus Holton cannot establish an ineffective assistance of counsel claim even if he could show that his counsel's performance was deficient. Thus Holton's arguments are not well-taken, and his fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶50} In his sixth assignment of error, Holton argues that even if we did not find any single error in this case prejudicial, we should find the "cumulative errors" here prejudicial.

{¶51} The Supreme Court of Ohio has held that "[a]lthough violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), at syllabus.

{¶52} In this case, we have found no error in the first two assignments of error, and even if we did there is no resulting prejudice to add to any cumulative

total as the evidence produced from the purported errors was entirely cumulative. Next, we have already found that any failure to provide specific jury instructions in this case was not prejudicial error alone, and even together there is no cumulative impact of any significance. Thus Holton's claim that his purported errors constituted cumulative error is not well-taken, and his sixth assignment of error is overruled.

*Conclusion*

**{¶53}** For the foregoing reasons, Holton's assignments of error are overruled and the judgment of the Logan County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/jlr**