[Cite as *State v. Lester*, 2018-Ohio-458.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PAULDING COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 11-17-05

      v.

STEPHEN LESTER,                      O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Paulding County Court
Trial Court No. 17-TRD-3293

Judgment Affirmed

Date of Decision: February 5, 2018

APPEARANCES:

    *Stephen Lester*, Appellant

    *Matthew A. Miller* for Appellee

**SHAW, J.**

{**¶1**} Defendant-appellant, Stephen Lester ("Lester"), brings this appeal from the August 30, 2017, judgment of the Paulding County Court finding Lester guilty of Speeding in violation of R.C. 4511.21(D)(3). On appeal Lester argues that there was insufficient evidence presented to convict him and that the trial court committed plain error by permitting certain testimony he claims was hearsay.

*Relevant Facts and Procedural History*

{**¶2**} On July 31, 2017, Lester was cited for Speeding in violation of R.C. 4511.21(D)(3). It was alleged that a pilot with the Ohio State Highway Patrol clocked Lester traveling 82 mph in a 65 mph speed zone. Lester pled not guilty to the charge and his case proceeded to a bench trial.[1]

{**¶3**} At trial the State first called Trooper Andrew Ettinger of the Ohio State Highway Patrol. Trooper Ettinger testified that he had attended and completed the police academy and that he also had his pilot license. Trooper Ettinger testified that he had been employed with the Ohio State Highway Patrol since 2003 and that he was a "Trooper Pilot," meaning that for the highway patrol he utilized an aircraft to conduct searches for missing persons, manhunts for criminals, surveillance missions, and speed enforcement.

---

[1] Lester represented himself at trial.

{¶4} Trooper Ettinger explained how determining speed via aircraft was done, which included the installation of a mile-long speed zone on a road with markings identifying each quarter-mile. Trooper Ettinger testified that he would track vehicles that entered into the speed zone using a properly calibrated stopwatch to obtain average speed in miles per hour as well as the time in seconds that it took the vehicle to travel each quarter mile. Trooper Ettinger testified that during his observations in the air he was in direct radio communication with a ground officer.

{¶5} Trooper Ettinger testified as to the procedure he used to calibrate the stopwatches used in measuring speed, which included a monthly check against the atomic clock and a daily check performed before and after equipment use. Trooper Ettinger testified that the stopwatch was operating appropriately during the monthly checks and during the daily checks on July 31, 2017.

{¶6} Trooper Ettinger testified that on July 31, 2017, he was flying over Paulding County over US24, near mile post 17. Trooper Ettinger testified that he was working with Sergeant Chavez who was on the ground in a marked patrol vehicle. Trooper Ettinger testified that at approximately 3:48 p.m. he observed a dark-colored vehicle in the left lane in the speed zone going approximately 79 mph for the first three quarters of the mile-long speed zone and 82 mph in the fourth quarter-mile of the speed zone. Trooper Ettinger testified as to how the math was

calculated to determine the speed of the vehicle, though he indicated that the stopwatch itself calculated the speed.

{¶7} After observing the vehicle speeding, Trooper Ettinger testified that he radioed to Sergeant Chavez regarding the vehicle in question. Sergeant Chavez stopped the identified vehicle, which Trooper Ettinger confirmed was correct as he had an "unbroken" view of it.

{¶8} On cross-examination, Trooper Ettinger testified that there was no video of the alleged speeding as seen from the airplane. Trooper Ettinger was then asked if he was a "certified" operator of the stopwatch, and he replied that he had 3-4 months of training and that he had completed the training satisfactorily, but he had no official "certification" specifically for operating the stopwatch.

{¶9} The State next called Sergeant Chavez of the Ohio State Highway Patrol. Sergeant Chavez testified that, as to the incident in question, Trooper Ettinger radioed him and told him that a dark-colored vehicle had been traveling 82 mph in the speed zone.[2] Sergeant Chavez testified that he identified the vehicle that Trooper Ettinger had indicated, that he confirmed it was the correct vehicle, and that he then initiated a traffic stop. Sergeant Chavez ultimately issued a ticket to the

---

[2] The ticket issued to Lester marked his vehicle as "blue." However, it was described as dark-colored by Trooper Ettinger. When viewed on the video from Sergeant Chavez's cruiser, Lester's vehicle was a very dark blue.

-4-

driver, which was Lester. Video of the stop from Sergeant Chavez's cruiser was entered into evidence.

{¶10} At the conclusion of Sergeant Chavez's testimony, the State rested. Lester did not present any evidence, relying on his argument that the State failed to present sufficient evidence to convict him. The trial court took the matter under advisement and indicated it would issue a written ruling.

{¶11} On August 30, 2017, the trial court filed a judgment entry finding Lester guilty of Speeding in violation of R.C. 4511.21(D)(3). The trial court summarized the evidence, cited the pertinent statute, and determined that the State had proven its case beyond a reasonable doubt.

{¶12} It is from this judgment that Lester appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's conviction of speeding was based upon insufficient evidence as to one element of the offense: speed exceeding sixty-five miles per hour.**

**Assignment of Error No. 2**
**The trial court committed prejudicial error in accepting hearsay testimony of the Trooper Pilot[']s credentials.**

*First Assignment of Error*

{¶13} In Lester's first assignment of error he argues that there was insufficient evidence presented to convict him. Specifically, he argues that the State

failed to establish that Trooper Ettinger was "certified" to operate the stopwatch used to determine Lester's speed.

## Standard of Review

**{¶14}** Whether there is legally sufficient evidence to sustain a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

## Analysis

**{¶15}** In this case Lester was convicted of Speeding in violation of R.C. 4511.21(D)(3), which reads, "No person shall operate a motor vehicle * * * upon a street or highway * * * [a]t a speed exceeding sixty-five miles per hour[.]"

**{¶16}** In convicting Lester, the State called two witnesses, both from the Ohio State Highway Patrol. The pilot from the State Highway Patrol, Trooper Ettinger, testified as to detecting a dark-colored vehicle exceeding the speed limit at a rate of 82 mph in a 65 mph zone. He testified as to how speeding was detected from the air and how it was done in this instance. He testified that he kept a visual

on the vehicle at all times and that the vehicle that was stopped by Sergeant Chavez was the vehicle that he had observed speeding.

{¶17} Sergeant Chavez testified that he stopped the vehicle he was directed to by Trooper Ettinger, which turned out to be Lester's, and issued him a citation.

{¶18} On appeal, Lester argues that there was insufficient evidence presented to convict him, claiming that the State failed to present evidence that Trooper Ettinger was "certified" to use the stopwatch that was used to determine his speed. Contrary to Lester's arguments, there is no indication that such a certification exists or that such a certification was required. It is required that the stopwatch be functioning properly and Trooper Ettinger did testify that the stopwatch in question was properly calibrated, detailing how that was done.

{¶19} Moreover, the State presented testimony that Trooper Ettinger was trained in how to use the stopwatch. While Trooper Ettinger did not testify that he was "certified" specifically in using a stopwatch, we cannot find that the State failed to establish the offense of Speeding in this instance beyond a reasonable doubt. Based on the evidence in the record, Lester's first assignment of error is overruled.

*Second Assignment of Error*

{¶20} In Lester's second assignment of error, he argues that the trial court committed plain error by permitting certain testimony that *Lester* solicited on cross-examination of Trooper Ettinger.

Standard of Review

**{¶21}** Generally, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *State v. Lauf*, 3d Dist. Putnam No. 12–16–06, 2017–Ohio–608, ¶ 54, citing *State v. Cassel*, 2d Dist. Montgomery No. 26708, 2016–Ohio–3479, ¶ 13, citing *State v. Graham,* 58 Ohio St.2d 350 (1979), and *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, ¶ 19. An abuse of discretion constitutes a decision that is arbitrary, capricious, or grossly unsound. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶22}** However, where there was no objection to an evidentiary issue before the trial court, we review the matter on appeal for plain error. *State v. Holton*, 3d Dist. Logan No. 2017-Ohio-6934, ¶ 18. We take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To prevail under plain error, Lester must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 69, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

Analysis

**{¶23}** In Lester's second assignment of error, he argues that the trial court erred by permitting the following testimony during Lester's own cross-examination of Trooper Ettinger.

> **LESTER: * * * [W]as your stop watch an analog or digital device?**
>
> **TROOPER ETTINGER: It's digital.**
>
> **LESTER: Digital?**
>
> **TROOPER ETTINGER: Yes sir.**
>
> **LESTER: Ok, um as you know he did ask, um [the] prosecutor asked some questions, now you are certified as a competent operator of such device; you have training, a certificate of any sort to validate that?**
>
> **TROOPER ETTINGER: Ah, no certificate I did receive training, ah the training period was ah, about four (4) months, so that was coming into the aviation section um, about four (4) month, three (3) or four (4) months training period.**
>
> **LESTER: Ok, so they provide you nothing to establish how you completed it, um license or certificate of training er? [sic]**
>
> **TROOPER ETTINGER: No certificate, ah there was a um, basically a final checkoff from the section commander showing that the, the section commander rode along with me showing that the ah, satisfactorily [sic] completion of the ah training.**

(Tr. at 20-21).

**{¶24}** On appeal, Lester argues that the preceding testimony from Trooper Ettinger on cross-examination constituted hearsay and that absent the "section

commander's" testimony "verifying the completion of training" the trial court erred in permitting Trooper Ettinger's testimony as to the completion of his training. (Appt's Br. at 9).

{¶25} Lester's arguments on appeal fail for a number of reasons. First, the testimony that he argues is objectionable *he actually elicited on cross-examination* of Trooper Ettinger. Second, Lester did not object to the purportedly objectionable testimony and he now seems to be arguing that he was "ineffective" as his own counsel for failing to do so, which is a wholly spurious claim. Third, Lester points to no actual "hearsay" testimony that could be objectionable even if he did object. Fourth, even assuming the testimony was objectionable, there is no indication that it altered the outcome of the entire trial such that it would constitute plain error. Thus for all of these reasons Lester's argument is not well-taken, and his second assignment of error is overruled.

*Conclusion*

{¶26} For the foregoing reasons Lester's assignments of error are overruled and the judgment of the Paulding County Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**